IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN MCCRAY | § | |
| | § | |
| VS. | § | C.A. NO. 4:23-cv-00995 |
| | § | |
| MAERSK LINE LIMITED | § | [JURY] |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE UNITED STATES DISTRICT/MAGISTRATE JUDGE:**

Plaintiff, Kevin McCray, files his Response to Defendant's Rule 56 Motion for Summary Judgment (Doc. Entry #23), respectfully urging the Court to deny same because:

(A.) The evidence presented herein raises genuine issues of material fact as to whether Defendant breached *Scindia*'s active control duty owed to Plaintiff and whether Defendant truly "turned over" or "relinquished" control of the vessel's common area walkway and component parts, including a metal grating, where the vessel's crewmembers remained fully responsible for maintaining, inspecting, and repairing such gratings, and ensuring those working aboard the vessel had safe access to perform their work.

(B.) Alternatively, the evidence presented herein raises genuine issues of material fact as to whether Defendant breached *Scindia*'s turnover duty owed to Plaintiff in failing to turn over the vessel in a safe condition and warn Plaintiff of any hidden or latent defects, that were known or should have been discovered by Defendant concerning the metal gratings located within the common area walkways prior to commencement of cargo operations.

(C.) To the extent proof of causation is in question, general maritime law recognizes the doctrine of *res ipsa loquitor* and genuine issues of material fact exist as to whether the doctrine applies based on the facts and evidence in this case.

## I.
## TABLE OF CONTENTS


1. TABLE OF AUTHORITIES .......... iii

2. STATEMENT OF NATURE AND STAGE OF PROCEEDING .......... 1

3. FACTUAL BACKGROUND .......... 2

4. SUMMARY JUDGMENT STANDARD .......... 11

5. EVIDENCE IN SUPPORT OF PLAINTIFF'S RESPONSE .......... 11

6. CONTROLLING LAW .......... 13

7. ARGUMENT AND AUTHORITIES .......... 15

   A. Genuine issues of material fact exist as to whether Defendant breached *Scindia*'s active control duty owed to Plaintiff and had "turned over" or "relinquished" control of the vessel's common area walkway and component parts, including a metal grating, where the vessel's crewmembers remained fully responsible for maintaining, inspecting, and repairing such gratings, and ensuring those working aboard the vessel had safe access to perform their work. .......... 19

   B. Alternatively, genuine issues of material fact exist as to whether Defendant breached its "turnover duty" by failing to turn over the vessel in a safe condition and warn Plaintiff of any hidden or latent defects, that were known or should have been discovered by Defendant concerning the metal gratings located within the common area walkways prior to commencement of cargo operations. .......... 24

   C. To the extent proof of causation is in question, general maritime law recognizes the doctrine of *res ipsa loquitor* and genuine issues of material fact exist as to whether the doctrine applies based on the facts and evidence in this case. .......... 39

9. CONCLUSION .......... 41

## II.
## TABLE OF AUTHORITIES


| CASE | | PAGE NO. |
|---|---|---|
| 1. | *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). | 11 |
| 2. | *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). | 11 |
| 3. | *Baham v. Nabors Drilling USA, LP*, 721 F. Supp. 2d 499 (W.D. La. 2010). | 22, 33 |
| 4. | *Barnett v. Sealand Service, Inc.*, 875 F.2d 741 (9th Cir. 1989). | 7 |
| 5. | *Berenyi, Inc. v. Nucor Corp.*, 2022 U.S. Dist. LEXIS 124789 (D.S.C July 13, 2022). | 7 |
| 6. | *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919 (2d Cir. 1985). | 7 |
| 7. | *Clements v. Quark, Ltd.*, 2007 WL 1087499 (E.D. La. Apr. 10, 2007). | 38 |
| 8. | *Davis v. Portline Transportes Maritime Internacional*, 16 F3d 532 (3d Cir. 1994). | 23 |
| 9. | *DeSantis v. Alder Shipping Co.*, 2008 WL 4007506 (D.N.J. Aug. 8, 2008). | 25 |
| 10. | *Dickerson v. M/V Proliv Vilkitskogo*, 2007 WL 1499753, 2007 AMC 734 (D.S.C. Jan. 5, 2007). | 24 |
| 11. | *England v. Reinauer Transp. Co.*, 194 F.3d 265 (1st Cir. 1999). | 13 |
| 12. | *Est. of Larkins v. Farrell Lines, Inc.*, 806 F.2d 510 (4th Cir. 1986). | 13 |
| 13. | *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x. 397 (5th Cir. 2007). | 15, 21 |
| 14. | *Flores v. Del Monte Fresh Produce N.A., Inc.*, 53 Fed. Appx. 810, 2002 WL 31779825 (9th Cir. Dec. 12, 2002). | 38 |
| 15. | *Futo v. Lykes Bros. Steamship Co.*, 742 F.2d 209 (5th Cir. 1984). | 20, 28 |
| 16. | *Fruge v. Penrod Drilling Co.*, 918 F.2d 1163 (5th Cir. 1990). | 20, 28 |
| 17. | *Grimble v. Maersk Line Ltd.*, 2020 U.S. Dist. LEXIS 264284 (S.D. Tex. July 27, 2020). | 11 |
| 18. | *Gross v. Southern Railway Co.*, 414 F.2d 292 (5th Cir. 1969). | 11 |

19. *Hill v. NSB Niederelbe Schiffahrtsges MBH & Co.*, 2003 WL 23162396 (E.D. Penn. Dec. 30, 2003). ....................26

20. *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92 (1994). ....................13, 22, 25, 26, 27

21. *Joffrion v. Coastal Cargo Co.*, 1995 WL 601089 (E.D. La. Oct. 11, 1995). ....................22

22. *Johnson v. United States*, 333 U.S. 46 (1948). ....................22

23. *Landry v. G.C. Constructors*, 514 F. App'x 432 (5th Cir. 2013). ....................22

24. *Kirksey v. Tonghai Maritime*, 535 F.3d 388 (5th Cir. 2008). ....................14, 25

25. *Kiwia v. M/V Oslo Bulk 9*, 541 F. Supp. 3d 696 (E.D. La. 2021). ....................25

26. *Lincoln v. Reksten Mgmt*., 354 F.3d 262 (5th Cir. 2003). ....................25

27. *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31 (5th Cir. 1997). ....................20

28. *Masinter v. Tenneco Oil*, 867 F.2d 892 (5th Cir. 1989). ....................13, 14, 23, 24

29. *McCuller v. Nautical Ventures, LLC*, 2011 WL 3209854 (5th Cir. July 29, 2011). ....................38*

30. *Moore v. M/V ANGELA*, 353 F.3d 376 (5th Cir. 2003). ....................14, 20, 25

31. *Moore v. M.P. Howlett, Inc.*, 704 F.2d 39 (2d Cir. 1983). ....................14, 20, 25

32. *Ollestad v. Greenville S.S. Corp.*, 738 F.2d 1049 (9th Cir. 1984). ....................15, 33, 38

33. *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13 (5th Cir. 1992). ....................14, 20

34. *Pluyer v. Mistui O.S.K. Lines, Ltd.*, 664 F.2d 1243 (5th Cir. 1982). ....................23

35. *Prinski v. Blue Star Line Marine Ltd.*, 341 F.2d 511 (E.D. Penn. 2004). ....................26, 27, 38

36. *Randolf v. Laeisz*, 896 F.2d 964 (5th Cir. 1990). ....................13

37. *Rockey v. Royal Caribbean Cruises, Ltd.*, 2001 U.S. Dist. LEXIS 21886 (S. D. Fla. 2001). ....................13

38. *Romero v. Cajun Stabilizing Boats Inc.*, 307 Fed. Appx. 849, 2009 WL 150655 (5th Cir. 2009). ....................15, 20*

39. *Scindia Steam Navigation Co. v. De Los Santos*,

451 U.S. 156 (1981). ..........................................................1, 13, 14, 19, 20, 26, 38, 39, 41

40. *Sinagra v. Atl. Ocean Shipping, Ltd.*, 182 F. Supp. 2d 294 (E.D.N.Y. 2001). .................27

41. *Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 513 (11th Cir. 2019). .........27

42. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527 (5th Cir. 1986). ....................................36, 39

43. *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266 (9th Cir. 1994). ..........................36, 39

44. *Turner v. Japan Lines, Ltd.*, 651 F.2d 1300 (9th Cir. 1981). ...........................................22

45. *United States v. Baycon Indus., Inc.,* 804 F.2d 630 (11th Cir. 1986). .............................22

46. *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313 (5th Cir. 1995). ..................11

**STATUTES/TREATIES/CODES** **PAGE NO.**

1. FED. R. CIV. P. 56. .........................................................................................7, 11

2. 33 U.S.C. §905(b). ......................................................................................1, 13, 15

## III.
## STATEMENT OF NATURE AND STAGE OF PROCEEDING

Plaintiff, a longshoreman, was injured while performing his work in the vicinity of cargo Bay 30 on board the *M/V MAERSK TENNESEE* on February 28, 2023. To perform his work lashing containers being loaded onto the Vessel, Plaintiff was required to utilize a common area walkway, which was fitted with metal gratings for Vessel crew to access the void space below. As Plaintiff was in the process of lashing a container, a metal grating in the common area walkway upon which he was standing, unexpectedly gave way, became dislodged, and/or failed, causing Plaintiff to fall into the void space below. As a result of the fall, Plaintiff sustained injuries for which he continues to undergo medical treatment.

On March 20, 2023, Plaintiff filed his Original Complaint against Maersk Line Limited and Maersk Line-Ltd., USA. (Doc. Entry #1). Plaintiff subsequently dismissed Maersk Line-Ltd., USA and Defendant Maersk Line Limited timely filed its Answer on April 5, 2023 (Doc. Entry #8). On November 3, 2023, the Court granted the Parties' Agreed Motion to Extend Expert Witness Deadlines. (Doc. Entry #15; *see also* Doc. Entry #14). Pursuant to that Order, Plaintiff's expert witness designations were due on or before January 5, 2024, and Defendant's expert witness designations were due on or before February 5, 2024. (Doc. Entry #15). Plaintiff timely designated his expert witnesses and produced their reports. On April 26, 2024, sixty (60) days after the parties' agreed-to extended deadline, Defendant designated its expert witnesses and produced reports.

On February 22, 2024, Plaintiff requested, and Defendant agreed to, a forty-five (45) day extension of the discovery deadline to permit the parties additional time to schedule depositions and otherwise complete discovery. On May 17, 2024, Defendant filed its Opposed Motion for Continuance (Doc. Entry#16), and Plaintiff filed his Response on May 23, 2024 (Doc. Entry#19).

On May 31, 2024, the Court held a hearing on Defendant's Opposed Motion and reset jury trial in this case to September 30, 2024, and dispositive motions to be filed on or before June 30, 2024. On June 28, 2024, Defendant filed its summary judgment as to all of Plaintiff's claims in this case. (Doc. Entry #23).

In its Motion, Defendant seeks summary judgment on grounds that it breached no duty to Plaintiff under *Scindia v. De Los Santos*, 451 U.S. 156 (1981), and that Plaintiff has no evidence as to the "cause" of the metal grating giving way and/or failing at the time of the accident. As shown herein, however, the summary judgment evidence makes clear that Defendant breached *Scindia*'s active control duty owed to Plaintiff and/or did not turn over the common area walkway and metal gratings, caused by Defendant's failure to properly maintain and inspect same, thus becoming liable for the unsafe condition aboard its vessel, which caused injury to Plaintiff. In addition, to the extent there is a question as to causation, general maritime law recognizes the doctrine of *res ipsa loquitor*. Therefore, the evidence raises genuine issues of material fact that warrant denial of Defendant's Motion. Accordingly, against this backdrop, Plaintiff files his Response.

## IV.
## <u>FACTUAL BACKGROUND</u>

On February 28, 2023, Plaintiff commenced working as a longshoreman by and under the direction of his stevedore employer, Houston Terminal, LLC ["HT"], in and about the *M/V MAERSK TENNESSEE* ["Vessel"] alongside Barbours Cut Container Terminal within the Port of Houston.[1] In accordance with company policy, HT conducted a brief shore side safety meeting prior to commencing operations for the day.[2] Through its duly authorized agents, the *M/V MAERSK TENNESSEE*, permitted and invited Plaintiff and other longshoremen to board and

[1] Ex. A, at pg. 26.
[2] *Id.*, at pp. 20, 36-37.

perform cargo operations aboard the vessel.[3] In doing so, Plaintiff and fellow longshoremen were required to lash containers as they were being loaded onto the Vessel.[4] To perform his work, Plaintiff, and other longshoremen would stand on the Vessel's common area walkways between the cargo bays and lash the containers as they were being loaded.[5] At the time of the accident, Plaintiff was working in the vicinity of cargo Bay 30 of the Vessel.[6] It is undisputed the common area walkways are used by longshoremen, Vessel crew, and other invitees to access the Vessel bays and to transit thwartships (port/starboard).[7] It is further undisputed that the common area walkways are fitted with metal gratings for the Vessel crew to access the void space below.[8] The metal gratings are component parts of the common area walkway, span the entire width of the walkway, and are inspected and maintained by the Vessel and her crew.[9]

At the time of the accident, Plaintiff was standing on the metal grating on the common area walkway and reached up to lash a container that had been loaded onto the Vessel. As Plaintiff reached up, suddenly and unexpectedly, the metal grating upon which he was standing gave way, became dislodged, and/or otherwise failed, causing him to fall into the void space below.[10] After being retrieved from the void space below, the subject metal grating was immediately inspected by John Depaolo, Plaintiff's Gang Foreman, who discovered that the "clip" or "latching" mechanism utilized to keep the metal grating in place was loose and bent and not secure, which caused the metal grating to fall and injure Plaintiff.[11]

---

[3] *Id.*, at pg. 24-25.
[4] *Id.*, at pg. 27.
[5] *Id.*, at pp. 35-36
[6] *Id.* at pg. 33-34.
[7] *Id.* at pg. 35; Ex. B, at pg. 9.
[8] Ex. A, at pg. 35; Ex. C.
[9] Ex. C; Ex. D.
[10] Ex. A, at pg. 39; Ex. B, at pg. 9-10; Ex C; Ex. E
[11] Ex. B, at pp. 10-11.

It is undisputed that on June 22, 2023, approximately 5 months ***after*** Plaintiff's accident, the Vessel's Chief Officer inspected the metal gratings.[12] It is further undisputed that there is no evidence any inspection of the metal gratings was performed by the Vessel crew prior to Plaintiff commencing work on the Vessel on the day of the accident.[13] As a result of Defendant's failure to adequately and properly maintain and inspect the subject metal grating to insure it was in safe working order for longshoremen to perform work onboard the Vessel, Plaintiff sustained serious injuries for which he continues to undergo medical treatment.[14]

## V.
## SUMMARY JUDGMENT STANDARD

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show there is no genuine issue as to any material fact and the defendant is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56. To support a motion for summary judgment, "the moving party [has] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When evidence of contradictory facts has been submitted, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Indeed, it is well settled that in "considering a motion for summary judgment, the court has no

[12] Ex. D.
[13] Prior to beginning his work, Plaintiff made a visual inspection of the metal gratings and they looked safe. Ex. A, at pg. 41.
[14] Ex. B, at pg. 14.

duty or function to try or decide factual issues. Its only duty is to determine whether or not there is an issue of fact to be tried." *See Gross v. Southern Ry. Co.*, 414 F.2d 292, 297 (5th Cir. 1969).

## VI.
## EVIDENCE IN SUPPORT OF PLAINTIFF'S RESPONSE

In support of his response, Plaintiff relies on all the pleadings and orders that are currently on file herein. Further, Plaintiff presents the following summary judgment evidence, which is attached hereto and filed contemporaneously herewith, which negates the essential grounds on which Defendants' Motion seeks summary judgment:

| **Exhibit** | **Description** |
|---|---|
| A | Deposition of Plaintiff, taken on April 24, 2024; |
| B | Sworn Statement of John Depaolo, taken on June 10, 2024; |
| C | Photographs of Metal Grating/Walkway, Bates Labeled PLTF000146 - 152; |
| D | Written Statement of Chief Officer Marston Albert, Bates Labeled MLL 1907; |
| E | Supplemental Report of Ronald Signorino, dated July 2, 2024; |
| F | Affidavit of Manuel M. Maldonado; and |
| G | Report of David J. Martyn, dated April 26, 2024. |

## VII.
## CONTROLLING LAW

Plaintiff's claims against Defendant arise under section 905(b) of the LHWCA, 33 U.S.C. §905(b), which provides a negligence-based cause of action to a longshoreman who is injured while working aboard a vessel. In the seminal case of *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981), the U.S. Supreme Court articulated the scope of a vessel owner's duty to longshoremen working aboard a vessel under 33 U.S.C. §905(b). Although the Supreme Court did not address every issue of vessel liability under §905(b), "[t]he basic principle which emerges from *Scindia* is that primary responsibility for the safety of the longshoremen rests upon

the stevedore." *Randolf v. Laeisz*, 896 F.2d 964, 970 (5th Cir. 1990). Despite this broad statement of immunity, vessel liability may nevertheless exist or arise:

> (1) if the vessel owner fails to warn the stevedore on "***turning over***" the ship of hidden defects of which it should have known;
>
> (2) for injury caused by hazards under the "***active control***" of the ship; or
>
> (3) if the vessel owner fails to "***intervene***" in the stevedore's operations when it has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.

*Id.*; *Masinter v. Tenneco Oil*, 867 F.2d 892, 897 (5th Cir. 1989)(overruled on other grounds).

The LHWCA does not define what actions constitute negligence. Individual questions are therefore resolved largely by the application of general tort principles. *See Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 97-98 (1994); *England v. Reinauer Transp. Co.*, 194 F.3d 265, 270 (1st Cir. 1999).[15]

## TURNOVER AND ACTIVE CONTROL DUTIES

"The 'turnover duty' relates to the condition of the ship upon the commencement of stevedoring operations." *See Moore v. M/V ANGELA*, 353 F.3d 376, 380 (5th Cir. 2003). This duty places two responsibilities on the vessel owner: (1) the shipowner owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety; and (2) the shipowner owes a duty to warn the stevedore of latent or hidden dangers which are known to the

[15] "While the *Scindia* Court defined a shipowner's duty of care under the amended LHWCA, it did not address directly whether a court or a jury should decide whether the shipowner breached its duty. It is sometimes said that a determination of negligence is a mixed question of law and fact. *Barnett v. Sea Land Service, Inc.*, 875 F.2d 741, 745 (9th Cir. 1989); *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1978). The existence and extent of a duty of care are questions of law, but proximate cause and whether such a duty has been breached are questions of fact. *Armstrong v. United States*, 756 F.2d 1407, 1409 (9th Cir. 1985). Summary judgment is rarely granted in negligence cases." *See Martinez v. Korean Shipping Corp.*, 903 F.2d 606, 609 (9th Cir. 1990).

vessel owner or should have been known to it. *See Kirksey v. Tonghai Maritime*, 535 F.3d 388, 392 (5th Cir. 2008).

The active control duty applies where the vessel has ***not*** relinquished control of an area to the stevedore. Specifically, a vessel has not relinquished control (*i.e.,* not been turned over) to the stevedore in cases where:

(1) it actively involves itself in the cargo operations and negligently injures a longshoreman, ***or***

(2) if it ***fails to exercise due care to avoid exposing longshoremen to harm*** from hazards they may encounter ***in areas***, or from equipment**,** ***under the active control of the vessel during the stevedoring operation***.

*Scindia*, 451 U.S. at 167 (emphasis added). Hence, in certain circumstances the active control and turnover duties are exclusive of one another. *See Romero v. Cajun Stabilizing Boats Inc.*, 307 Fed.Appx. 849, 851-52 at *2 (5th Cir. 2009). The active control duty "recognizes that although a vessel owner no longer retains the primary responsibility for safety in a work area turned over to an independent contractor, no such cession results as it relates to areas or equipment over which the vessel's crew retains operational control." *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x. 397, 403-04 (5th Cir. 2007)(quoting *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997)). The active control duty applies to those areas under the vessel's active control, even if the stevedore shares control with the vessel or if at some earlier time the area was under the stevedore's exclusive control." *Dickerson v. M/V PROLIV VILKITSKOGO*, No. C.A.2:04-23258-PMD, 2007 U.S. Dist. LEXIS 39321, 2007 WL 1499753, at *3 (D.S.C. Jan. 5, 2007) (citing *Davis v. Portline Transportes Mar. Internacional*, 16 F.3d 532, 537 (3d Cir.1994)). To trigger this duty, "the vessel must have substantially controlled or been in charge of (i) the area in which the hazard existed, (ii) the instrumentality which caused the injury, ***or*** (iii) the specific activities the

stevedore undertook." *Davis*, 16 F.3d at 540 (emphasis added).[16]

## IX.
## ARGUMENT AND AUTHORITIES

**(A.) Genuine issues of material fact exist as to whether Defendant breached *Scindia*'s active control duty owed to Plaintiff and had "turned over" or "relinquished" control of the subject common area walkway and component parts where the Vessel officers and crewmembers remained responsible for the maintenance, inspection and repair of the subject metal grating.**

As set forth above, the shipowner's active control duty extends to injuries caused by hazards in areas that remain under the vessel's active control. *See Scindia*, 451 U.S. at 167 (stating the active control duty requires the shipowner to "exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation"); *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 16 (5th Cir. 1992). The active control duty includes areas under the vessel's active control, even if the stevedore shares control with the vessel or if at some earlier time the area was under the stevedore's exclusive control. *See Moore v. M.P. Howlett, Inc.*, 704 F.2d 39, 40-41 (2d Cir. 1983). The shipowner's liability based on the active control duty is also ***not*** relieved even if the hazardous condition happens to be "open and obvious" to the stevedore. *See Pimental*, 965 F.2d at 16.

In the instant case, it is undisputed Plaintiff's accident occurred while he was standing on a metal grating within the Vessel's common area walkway between the cargo bays. Specifically, as Plaintiff was attempting to lash a container that had just been loaded onto the Vessel, the subject metal grating suddenly and unexpectedly gave way, became dislodged, and/or otherwise failed,

[16] As poignantly noted by the Fifth Circuit in *Futo v. Lykes Bros. Steamship Co.*, 742 F.2d 209, 215 (5th Cir. 1984): "We recognize that the fact that a condition involves the ship itself, its gear, or equipment is relevant, and in some circumstances may be determinative. The shipowner, after all, is generally primarily responsible for repairing his own ship, its equipment, or gear, and usually stands to gain the most by its proper maintenance. Moreover, the owner likely stands in the best position to appreciate the danger caused by a defect in the ship itself, its gear, or equipment."

causing him to fall into the void space below.[17] In the area in which Plaintiff was working on the Vessel, he had no choice but to stand on the subject metal grating to perform his duties.[18] Defendant admits that it was responsible for the inspection and maintenance of the common area walkways, including the subject metal grating.[19] The evidence further establishes the common area walkways and metal gratings were utilized by Vessel crew, longshoreman, and other invitees allowed on board the Vessel to transit thwartships.[20]

Despite inspecting and maintaining control over the walkways and metal gratings, Defendant contends the active control duty is inapplicable in this case.[21] Defendant's contention, however, is wholly misplaced and fails to consider the second prong of a vessel's active control duty owed to longshoremen working on board the Vessel – failing to remedy hazards the longshoremen may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation. *See Landry v. G.C. Constructors*, 514 F. App'x 432, 435 (5th Cir. 2013) ("[E]ven where the vessel [owner] does not actively involve itself in the stevedoring operations, it may be liable if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." (citations and quotation marks omitted)); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir. 1986) (affirming the district court's finding that the vessel owner was negligent where the longshoreman slipped and fell in an area under the control of the vessel owner and the vessel owner retained the obligation to clean the deck); *Kiwia v. M/V Oslo Bulk 9*, 541 F. Supp. 3d 696, 709 (E.D. La. 2021)(rejecting the defendant's contention that

[17] Ex. B, at pg. 162.
[18] Ex. C.
[19] Ex. D.
[20] Ex. B, at pg. 9; Ex E, at pg. 3.
[21] Def. Mot., at pp. 21 – 23.

the active control duty was inapplicable because the owner did not have control over the "actual methods" of the stevedore's work). Such a situation confronts the Court in this case and the "active control" duty applies where an appurtenance and component part of the Vessel causes a longshoreman's injury.

Immediately following Plaintiff's accident, John Depaolo, Plaintiff's Gang Foreman, inspected the metal grating and observed that the clip or latching mechanism was loose and bent, which caused the metal grating to give way and fall. Specifically in this regard, Mr. Depaolo stated as follows:

Q. And in this area of the ship where the grating and the hole where Mr. McCray fell, what is that? What part of the ship is that?

A. Well, it's a walkway between the hatches. There's a word for it, and I can't believe I don't –

Q. I've heard it referred to as a catwalk.

A. Catwalk or walkway. Walkway was the word I was searching for.

Q. And is it your understanding the walkway or the catwalk, is that utilized by not only longshoremen but also other people on the vessel?

A. Yes, sir. It's utilized by the ship's crew, sometimes inspectors, whoever needs to move around on a vessel. If it helps them to go across that walkway or catwalk, that's what they use.

Q. And the grating was in the middle, if you will, of the walkway?

A. Yes, sir.

Q. And before you got to the grating that had fallen or the area, if you will, where Mr. McCray had fallen, was there any type of warnings or boundary tape saying not to be near that particular area?

A. No, sir.

Q. **And I understood you earlier to say that you did an inspection once you arrived?**

A. **Yes, sir.**

Q. **And walk me through what you inspected and what you remember seeing.**

A. **Well, I remember that the hole was open and Mr. Maldonado went down the ladder into the hole. He went down into the hole and retrieved the grating that fell through with Mr. McCray. And we pulled it up and looked at it and set it into place. And basically that was it. We just observed as much as we could. And I did notice that one of the clips were bent, the securing clips.**

Q. Okay. And what else about that securing clip did you observe?

A. Well, that it was not tight. It was loose. And that's what the grate needs to be firm and tight in order to hold the grate in place as you can see on the pictures.

Q. And let me just show for purposes of illustration, I want to go to the last photo, which is PLTF 152.[22] And can you identify what that picture -- what you're depicting in that picture?

A. Yes, sir. It's -- I believe this is the clip or one of the clips that held the grating in place that I took a picture of to show how they keep the grating in place. And I believe that clip was bent, to the best of my recollection.

Q. And what else about it besides being bent?

A. And it was loose. It would move around and swivel.

* * * *

Q. And in your opinion, who would have been responsible to make sure that the grating and the connector, or whatever you want to call it, that you inspected would be secure and tight?

A. In my opinion, that would definitely be the ship. It's their equipment.

Q. And that was my next question. The area where he fell, that's ship's equipment?

A. Uh-huh.

Q. The longshoremen --

A. Yes, sir.

Q. The longshoremen don't bring securing clips --

A. No.

[22] Ex. C, at PLTF 152.

Q. -- or gratings?

A. No.

Q. This is something that's already there on the ship?

A. Yes, sir.

Q. And as longshoremen, you rely on the fact the ship has done its job to make sure that they have provided a safe area for you to do your job?

A. Yes, sir.

Q. And do you believe that occurred for Mr. McCray?

A. Obviously not.

Q. **And the reason is is based on your inspection of the clip, it was bent and loose?**

A. **Yes, sir.**

Q. **And that in your opinion is what caused the grating to fall when Mr. McCray stepped on it?**

A. **Yes, sir.**

Q. **Is there any other thing you can think of that may have caused this accident to occur other than what you observed?**

A. **Not that I can think of, sir.**

* * * *

Q. (BY MR. ALLISON) Mr. DePaolo, I was looking; and just for the record, in your experience, how many years have you been out in the longshoring?

A. I'll get my 47-year seniority button on October 1st.

Q. And in your experience as a longshoreman, is it common for these gratings to just fall?

A. No.[23]

Based on Mr. DePaolo's statement, Plaintiff's liability expert, Ronald Signorino, provided a supplemental report, opining as follows:

[23] Ex. B, at pp. 9-13, 15-16 (emphasis added).

> The weight of the Plaintiff while using the grating in its intended manner would not have caused the clamps to bend or loosen. The description from Mr. DePaolo indicates that the grating was not properly maintained or not properly secured. Based on Mr. DePaolo's statement, the crew did not properly inspect and ensure that the grating's clips were secured and in good working order.
>
> Mr. DePaolo's statement clearly shows that the crew's failure to properly inspect and maintain the grate prior to Mr. McCray coming on board the C/V MAERSK TENNESSEE to perform his work was the cause of his fall. The subject grating and clips securing same are part of the vessel and the vessel's crew is required to inspect and maintain the clips and ensure they are properly secured and safe. It is not within the scope of a longshoreman's work to check the clips on a grate to see if they are properly secured. Further, the catwalk in which the subject grating is located is an area used by many different workers, including longshoremen, surveyors, crew, etc. who may be present on the vessel making it the vessel crew's responsibility to properly inspect and maintain the grating and clips.[24]

Moreover, it is undisputed that Defendant allegedly conducted an inspection of the subject metal grating on June 22, 2023, approximately 5 months ***after*** Plaintiff's accident.[25] However, wholly absent from the record is any evidence that a Vessel crewmember performed an inspection of the walkways and/or metal gratings upon the Vessel's arrival in the Port of Houston and prior to Plaintiff and his fellow longshoremen boarding the Vessel to perform their work.[26] Indeed, Defendant solely relies on Plaintiff's testimony that he did not visually see anything unsafe about the subject metal grating on the day of the accident.[27] Such testimony is not direct evidence the subject metal grating was secured properly and in proper working order on the day of the accident.[28] *See Thomas v. Newton Int'l Enterp.*, 42 F.3d 1266, 1270-71 (9th Cir. 1994)(concluding there was a material issue of fact of a breach of the vessel's active control duty regarding the "unreasonable danger" of an "unguarded, uncovered deck opening or manhole position within two

[24] Ex. E, at pg. 3.
[25] Ex. D.
[26] Defendant's liability expert, David J. Martyn, P.E., CSP, CMI, states that the only inspection conducted by the Vessel crew was allegedly on February 22, 2023, six days prior to the accident. Ex. G, at pg. 13.
[27] Def's Mot, at pp. 18.
[28] Mr. Martyn acknowledges the ship's crew is "generally in the best position to identify potential safety hazards on board their ship." Ex. G, at pg. 14.

feet of the bottom of an access ladder"); *Baham v. Nabors Drilling USA, LP*, 721 F. Supp. 2d 499, 510 (W.D. La. 2010)(concluding the vessel owner retained control over a ladder and walkway to the crane in which the plaintiff was performing work); *Joffrion v. Coastal Cargo Co.*, 1995 WL 601089, at *2 (E.D. La. Oct. 11, 1995)(concluding that a guardrail attached to a ladder within a hold fell outside the area of the stevedore's control because it was not a hazardous condition arising from the stevedoring operations being conducted within the hold). In fact the opposite is true, the securing mechanism of the subject metal grating was loose and/or bent causing it to become dislodged and fall.[29]

Based on the foregoing evidence, the Vessel and her crew never relinquished control of the common area walkway and subject metal grating. *See, e.g., Masinter*, 867 F.2d at 897-98 (concluding that a stairway and the position of same remained under the control of the vessel owner); *Pluyer v. Mistui O.S.K. Lines, Ltd.*, 664 F.2d 1243, 1247 (5th Cir. 1982)(finding a shipowner breached its active control duty in furnishing a dangerous ladder to a longshoreman at the outset of the operations and was liable for the longshoreman's injuries); *see also Davis v. Portline Transportes Maritime Int'l*, 16 F.3d 532, 541 (3d Cir. 1994)(concluding that a "jury may find that the vessel exercised control or took charge over an area either because it never turned exclusive control of the area over to the stevedore but retained substantial control, or because the vessel substantially interfered, by invitation or otherwise, with the stevedore's exercise of exclusive control, such as by actively intervening in the area"); *Dickerson v. M/V Proliv Vilkitskogo*, 2007 WL 1499753, 2007 AMC 734, 738 (D.S.C. Jan. 5, 2007)(finding genuine issues of material fact existed as to whether the vessel owner remained in control of the egress from within the cargo hold once cargo being loaded blocked a fixed vertical ladder). Because Defendant

[29] Ex. B, at pg. 13.

remained in control of the subject metal grating, it had a continuing duty of care to those using the common area walkway and metal grating, including Plaintiff. *See Masinter*, 867 F.2d at 897. Therefore, the evidence raises genuine questions of material fact as to the cause of the metal grating to give way and/or fail and injure Plaintiff, and whether Defendant breached its "active control" duty owed to Plaintiff. Accordingly, Defendants' Motion should, in all things, be DENIED.

**(B.) Alternatively, assuming *arguendo* the subject grating and walkway were turned over to the stevedore, genuine issues of material fact exist as to whether Defendant breached its "turnover duty" by failing to warn Plaintiff of a hazardous condition that was known or should have been known by Defendant; and failing to inspect, maintain, and/or repair the subject metal grating, an appurtenance of the Vessel, in a safe and proper working condition.**

As set forth above, the "'turnover duty' relates to the condition of the ship upon the commencement of stevedoring operations." *Moore*, 353 F.3d at 380. The turnover duty has two components. First, the shipowner owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety. Second, and as a corollary to the initial turnover duty, the shipowner owes a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it. *See Kirksey*, 535 F.3d at 392; *Lincoln v. Reksten Mgmt*., 354 F.3d 262, 266 (5th Cir. 2003). The duty to warn attaches to latent or hidden hazards, and "[a]bsent actual knowledge of a hazard, …. the duty to warn may attach only if the exercise of reasonable care would place upon the shipowner an obligation to inspect for, or discover, the hazard's existence." *See Howlett*, 512 U.S. at 99-100.

In regard to the cargo stow itself, the scope of the shipowner's duty to warn is "narrow" because the "cargo stow is separate and distinct from other aspects of the ship." *Id.*, at 104. Therefore, the "location of the defect in the cargo stow and cargo area, as opposed to the ship's gear, equipment, tools, and workplace, narrows the vessel's corollary duty to warn." *See DeSantis*

*v. Alder Shipping Co*., 2008 WL 4007506, at *4 (D.N.J. Aug. 8, 2008)(citing *Howlett*, 512 U.S. at 105). Indeed, the distinction between the cargo stow and other areas of the ship exists because "the vessel and its crew have direct access to (and control over) the ***ship itself*** and its gear, equipment and tools" and Congress intended to place liability for injuries on the party who controls the area where the injuries occurred.[30] *Howlett*, 512 U.S. at 104-05 (emphasis added). Accordingly, while the shipowner's duty as to the cargo stow is limited to "latent defects, the vessel owner has a ***general 'duty of reasonable care and a duty to warn as to the ship*** and its equipment.'" *See Prinski v. Blue Star Line Marine Ltd.*, 341 F.2d 511, 517 (E.D. Penn. 2004)(quoting *Hill v. NSB Niederelbe Schiffahrtsges MBH & Co*., 2003 WL 23162396, at *4 (E.D. Penn. Dec. 30, 2003))(emphasis added). In cases involving the structure of the ship and her appurtenances, the duty of reasonable care under the turnover duty applies, rather than the more limited duty related to the cargo stow.[31] *Id*. Therefore, determining whether the common area walkway and metal grating was part of the cargo stow or part of the vessel itself or its gear, equipment, tools, and workplace, is significant. *See Howlett*, 512 U.S. at 104 ("Because the vessel does not exercise the same degree of operational control over, and does not have the same access to, the cargo stow, its duties with respect to the stow are limited by comparison.").

Here, it is undisputed that the common area walkway and metal grating was an appurtenance of the Vessel. Based on the evidence, it is readily apparent the common area

---

[30] Defendant's motion improperly attempts to shift the burden of Defendant's duty to warn and inspect the vessel for hazardous conditions to the stevedore. (Defs.' Mot., at pp. 17-18). Defendant's argument is wholly misplaced as reflected in *Howlett, 515 U.S. at 104-05,* and its progeny.

[31] It is well established that a vessel owner's limited duty to warn is only in the context of defects in the ***cargo stow***. Indeed, *Howlett*, which Defendant cites in its Motion, clearly distinguishes a vessel owner's duty to warn of defects within the cargo stow from a duty to warn of hazards in other areas of the vessel, including the vessel itself, equipment and appurtenances. *See Howlett*, 512 U.S. at 104. Thus, Defendant's discussion of the vessel owner's more limited duty to warn about defects within the cargo stow/cargo area is without merit and not relevant to the facts of this case. (Defs.' Mot., at pp. 17-19).

walkway and metal grating was not part of the cargo stow (containers being loaded onto the hatch covers of the Vessel's cargo bays), but part of the general structure of the vessel. *See, e.g., Prinski*, 341 F. Supp. 2d at 518 (concluding that archways were part of the general structure of the vessel, not the cargo stow); *Sinagra v. Atl. Ocean Shipping, Ltd.*, 182 F. Supp. 2d 294, 297 n.1 (E.D.N.Y. 2001)(finding that "stacking shoes" – a mechanism placed in the four corners of a shipping container to attach containers together – was vessel equipment rather than part of the cargo or cargo stow). Thus, Defendant's general duty of reasonable care applies in this case, rather than the more limited duty related to the cargo stow.[32] *Id.*, at 98-99. Simply stated – the policy reasons for the Supreme Court's holding in *Howlett* for limiting a vessel's turnover duty with respect to dangerous conditions that arise in the cargo stow has absolutely no application to a dangerous condition of a metal grating within a common area walkway, which is an appurtenance of the Vessel.

Moreover, and importantly, whether Defendant breached its turnover duty in regard to the inspection and maintenance of metal gratings in common area walkways, has been previously decided in this Court. Specifically, in *Grimble v. Maersk Line Ltd.*, 2020 U.S. Dist. LEXIS 264284 (S.D. Tex. July 27, 2020)(J. Werlein), the Court addressed a strikingly similar issue involving a grating in a walkway that became dislodged and/or missing causing injury to a longshoreman. In *Grimble*, the plaintiff-longshoreman was injured while unlashing containers aboard the M/V MAERSK WISCONSIN, owned by Defendant, when he fell into a hole on a common area walkway, either "because the grating that covered it was attached insecurely and collapsed when

---

[32] Without conducting any analysis as to where Plaintiff was injured, Defendant's motion urges this Court to adopt the limited standard of care that pertains to the cargo stow rather than apply the appropriate duty for vessel appurtenances as set forth in *Howlett*. It is undisputed Plaintiff fell while standing on a metal grating within the Vessel's common area walkway. Plaintiff was not injured as a result of a condition that existed within the cargo stow itself.

plaintiff stepped on it or because the grating had already fallen into the hole, leaving it open." *Id.* Defendant filed a motion for summary judgment, which was denied. *Id.* In denying Defendant's summary judgment, the Court concluded that genuine issue of material fact existed as to whether the "accident was caused by an improperly secured grate that did not present an open and obvious danger" and Defendant had "not shown that it is entitled to summary judgment on plaintiff's claim for breach of the turnover duty." *Id.*

Defendant's failure to warn of the known hazardous condition of the subject metal grating and inspect and maintain the metal grating in a safe condition[33] constitutes negligence and was the proximate cause of Plaintiff's injuries.[34] Defendant breached its "turnover" duty to "warn the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work," and failed to warn Plaintiff of the hazardous condition which was known or should have been known by Defendant.[35] *See Scindia*, 451 U.S. at 167. Accordingly, genuine issues of material fact exist as to whether Defendant breached its turnover duty owed to Plaintiff. *See Flores v. Del Monte Fresh Produce N.A., Inc.*, 53 Fed.Appx. 810 (9th Cir., Dec. 12, 2002)(stating that whether a shipowner "acted reasonably or whether the condition was unreasonably dangerous is a question of fact and generally not appropriate for resolution at the summary judgment stage"); *see also Clements v. Quark, Ltd.*, 2007 WL 1087499, at *2 (E.D. La. Apr. 10, 2007)(denying summary judgment because "serious fact issues" existed concerning the

---

[33] "Nothing in *Scindia* dictates or even applies an expansive duty for stevedores to thoroughly inspect and discover non-obvious dangers on a ship." *See McCuller v. Nautical Ventures, LLC*, 2011 WL 3209854, at *4 (5th Cir. July 29, 2011).
[34] Ex. B, at pg. 13.
[35] Ex. B, at pp. 10-12.

vessel owner's lack of maintenance and failure to comply with the "mandatory duty to inspect and find defects and to warn of these defects"); *Prinski*, 341 F.Supp.2d at 521 (stating that "because of stevedore's relative inexperience related to defects outside the cargo stow, there may be hazards involving the vessel or its equipment that stevedores cannot recognize or anticipate even though a shipowner should know about or discover the hazard"). Thus, Defendant's Motion should, in all things, be DENIED.

**(C.) General maritime law recognizes the doctrine of *res ipsa loquitor* and genuine issues of material fact exist as to whether the doctrine applies based on the facts and evidence in this case.**

Alternatively, in the event the foregoing evidence does not constitute "proof" of causation as Defendant contends in its Motion,[36] it is well established that general maritime law recognizes the doctrine of *res ipsa loquitor*. *See Johnson v. United States*, 333 U.S. 46 (1948); *United States v. Baycon Indus., Inc.,* 804 F.2d 630 (11th Cir. 1986); *Rockey v. Royal Caribbean Cruises, Ltd.*, 2001 U.S. Dist. LEXIS 21886 (S. D. Fla. 2001). The doctrine of *res ipsa loquitor* "permits the trier of act to draw inferences of negligence," and is ordinarily a question for the jury. *See Est. of Larkins v. Farrell Lines, Inc.*, 806 F.2d 510, 512 – 13 (4th Cir. 1986); *Fruge v. Penrod Drilling Co.*, 918 F.2d 1163 (5th Cir. 1990)(concluding that the doctrine of *res ipsa loquitor* supplies an inference from which the jury may conclude the Defendant was negligent). In determining whether the doctrine applies, the fact finder must determine by a preponderance of the evidence that:

(1) the injured person is not contributorily negligent;
(2) the defendant is under exclusive control of what caused the injury; and
(3) the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care.

[36] Def.'s Mot., at pp. 5-8.

*See Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 513 (11th Cir. 2019). As set forth above, such elements apply to the facts in the instant case: there is absolutely no evidence Plaintiff was contributorily negligent for causing the subject metal grating to fall,[37] Defendant had exclusive control of the common area walkway and subject metal grating,[38] and a longshoreman falling through a deck grating on a common area walkway of the Vessel is not something that occurs in the absence of Defendant's negligence.[39] Thus, based on the evidence and testimony, material issues of genuine fact exist as to the elements of *res ipsa loquitor*. *See Berenyi, Inc. v. Nucor Corp.*, 2022 U.S. Dist. LEXIS 124789 *29 (D.S.C July 13, 2022) (finding that genuine issues of material fact as to one of the elements of *res ipsa loquitor* existed and denying summary judgment).

## X.
## CONCLUSION

As shown herein, the summary judgment evidence demonstrates that genuine issues of material fact exist as to whether Defendant breached its "active control" duty owed to Plaintiff as a result of the Vessel crew's active involvement with, and responsibility for, the inspection and maintenance of the common area walkway and subject metal grating. The evidence and testimony clearly shows the Vessel crew was responsible for and actively involved in providing safe means for longshoreman to perform their work on the common area walkways and metal gratings contained therein, and was at all times responsible for the maintenance, inspection and repair of the metal gratings. Alternatively, genuine issues of material fact exist as to whether Defendant breached its turnover duty by failing to warn Plaintiff of the dangerous condition of the subject metal grating which was known or should have been known to Defendant prior to Plaintiff and his fellow longshoremen commencing cargo operations on board the Vessel. Finally, to the extent the

[37] Def's Expert
[38] Ex. B, at pg. 12.
[39] *Id.*, at pg. 15.

issue of causation is questioned, material issues of fact exist as to application of the doctrine of *res ipsa loquitor*. Defendant has clearly failed to carry its summary judgment burden, and summary judgment must be DENIED.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Kevin McCray, prays the Court deny Defendant Maersk Line Limited's Motion for Summary Judgment, and for all such other and further relief to which he may show himself justly entitled.

Respectfully submitted,

GILMAN ✵ ALLISON LLP

*/s/ Brenton J. Allison*

Brenton J. Allison
Texas Bar No. 24040417
Federal I.D. No. 36863
ballison@gilmanallison.com
Douglas T. Gilman
Texas Bar No. 24048496
Federal I.D. No. 596954
Michael S. Prejean
Texas Bar No. 24092993
Federal I.D. No. 2513911
2005 Cullen Blvd.
Pearland, Texas 77581
Telephone: (888) 225-5767
Facsimile: (866) 543-3643

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this document on this **18th day of July, 2024,** and that a true and correct copy of the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure ***via*** **CM/ECF**, facsimile (pursuant to written agreement of counsel), hand delivery, or certified mail – return receipt requested, as indicated below:

Thomas N. Lightsey, III ***VIA CM/ECF***
HOLMAN FENWICK WILLAN USA LLP
5151 San Felipe, Suite 400
Houston, Texas 77056

*/s/ Brenton J. Allison*
Brenton J. Allison