DocuSign Envelope ID: 23256B90-87C8-4ACC-AB68-096B7480C755

S-E-A™

INVESTIGATION, RESEARCH AND TESTING

Since 1970

# Kevin McCray v. Maersk Line Limited and Maersk Line-Ltd, USA - File Review

Maersk Line Limited

*Maersk Tennessee*

Date of Incident: February 28, 2023

Prepared for:

**Mr. Tom Lightsey, Esq.**

**HFW**

5151 San Felipe, Suite 400
Houston, Texas 77056

Case No. 4:23-cv-00995

## S-E-A Matter No. 05.141901

Issue Date: April 26, 2024

DocuSigned by:

STATE OF TEXAS
DAVID J. MARTYN
125903
LICENSED
PROFESSIONAL ENGINEER

This item has been digitally signed and sealed by David Martyn, on 4/26/2024.

Printed copies of this document are not considered signed and sealed and the signature must be verified on any electronic copies.

EXHIBIT
G
exhibitsticker.com

# Table of Contents

**List of Figures** .....3

**Acronyms, Abbreviations and Definitions** .....4

**I. Executive Summary** .....5

Matter Assignment .....5

Scope .....6

Methodology .....6

Conclusions .....6

Signatures .....7

**II. Procedures** .....8

**III. Discussion** .....9

Background .....9

Vessel Description .....9

Incident Description .....10

Analysis .....13

Review of Report by Mr. Ronald L. Signorino .....14

Rebuttal .....14

**Appendices** .....16

Investigator Credentials .....16

DocuSign Envelope ID: 23256B90-87C8-4ACC-AB68-096B7480C755

# List of Figures


Figure 1: *Maersk Tennessee* (image from www.vesselfinder.com). ....9

Figure 2: Grating surface where Mr. McCray fell (Bates No. MLL 000011)....11

Figure 3: Close-up of grating fasteners (Bates No. MLL 000010)....11

Figure 4: Still image of incident video at run time 2:49. ....12

Figure 5: Cropped, still image of incident video at run time 2:49....12

DocuSign Envelope ID: 23256B90-87C8-4ACC-AB68-096B7480C755

## Acronyms, Abbreviations and Definitions

| | |
|---|---|
| ABS | American Bureau of Shipping - classification society |
| CFR | Code of Federal Regulations |
| CMI | Certified Marine Investigator |
| COI | Certificate of Inspection |
| CSP | Certified Safety Professional |
| ISM | International Safety Management Code |
| LR | Lloyd's Register - classification society |
| OSHA | Occupational Safety and Health Administration |
| P.E. | Professional Engineer |
| PSIX | Port State Information Exchange |
| USCG | U.S. Coast Guard |

# I. Executive Summary

## Matter Assignment

SEA, Ltd. (S-E-A) was requested by Mr. Tom Lightsy of HFW to complete a file review for the matter of Kevin McCray v. Maersk Line Limited (Maersk). On February 28, 2023, Mr. McCray, an employee of Houston Terminal, LLC, was working as a stevedore on board the container ship *Maersk Tennessee* while moored at the Barbours Cut Terminal in La Porte, Texas. Mr. McCray fell when a grating walking surface reportedly gave way while he was standing on it; he reportedly fell approximately six feet to the surface below. Mr. McCray was reportedly injured because of the fall. This file review was assigned to the direction of S-E-A Senior Naval Architect/Marine Engineer David J. Martyn, P.E., CSP, CMI, as S-E-A Matter No. 05.141901.

S-E-A is an independent consulting firm that has provided forensic engineering and origin/cause services since 1970. S-E-A is headquartered in Columbus, Ohio, and currently has 16 offices nationwide.

Mr. Martyn has investigated numerous commercial vessel crew member injuries throughout his career, applying principles of human factors, safe design, and safety management. He has been court qualified to give expert opinions regarding crew member safety in matters before Federal courts. Mr. Martyn earned Bachelor and Master of Science Degrees in Naval Architecture/Marine Engineering as well as a Master of Science Degree in Industrial and Operations Engineering. He is a licensed Professional Engineer (P.E.) in the State of Texas, as well as 24 other states. He is a Certified Marine Investigator (CMI) and a Certified Safety Professional (CSP). The CSP credential is the highest credential issued by the Board of Certified Safety Professionals. Pursuant to Federal Rule 26, a current copy of Mr. Martyn's professional resume is included in the Appendices of this report as **Attachment 1**. A copy of Mr. Martyn's testimony log for the past four years is included as **Attachment 2.** For this assignment, S-E-A is being compensated at a rate of $360 per hour for Mr. Martyn's time; S-E-A's rate sheet is included as **Attachment 3.**

## Scope

Specifically, S-E-A was requested to opine, if possible, on the causal factors of Mr. McCray's incident. Additionally, S-E-A was requested to review and rebut, if necessary, the report of Mr. Ronald L. Signorino of Blueoceana Incorporated, dated January 5, 2024.

## Methodology

The methodology utilized by S-E-A during the investigation of this incident was in accordance with scientific methodologies and applicable principles. The investigation and analysis of any incident is a complex and scientific endeavor. The methodology of such an endeavor, therefore, must include the comprehensive, objective, and accurate compilation and analysis of the available data.

## Conclusions

- **Maersk's safety management system had procedural mechanisms in place to identify and correct potential hazards associated with the crossdeck grating.**
- **Maersk properly followed its procedures and properly inspected the area in question before the incident.**
- **Regardless, the hazardous condition was latent, not readily identifiable by *Maersk Tennessee's* crew.**
- **It was inappropriate for Mr. Signorino to suggest that Maersk or the crew of the *Maersk Tennessee* could otherwise detect any potential hazards associated with the grating walking surface prior to Mr. McCray's incident.**
- **Mr. Signorino did not address the February 22, 2023, inspection report produced by Maersk.**

DocuSign Envelope ID: 23256B90-87C8-4ACC-AB68-096B7480C755

## Signatures

S-E-A and the undersigned hereby certify the opinions and conclusions expressed herein were formed to a reasonable degree of professional certainty. They are based upon the application of reliable principles and scientific methodologies to all of the facts known by S-E-A and the undersigned when this report was issued, as well as knowledge, skill, experience, training, and/or education. Should additional information be discovered, S-E-A and the undersigned reserve the right to appropriately amend or augment these findings.

| Prepared By: | Technically Reviewed By: |
|---|---|
| DocuSigned by: David J. Martyn B9F67F26205F497... | Bryan R. Emond/beb |
| David J. Martyn, P.E., CSP, CMI<br>Senior Naval Architect/Marine Engineer<br>State of Texas<br>License No. 125903<br>SEA, Ltd. Registration No. F-2200 | Bryan R. Emond |

DJM/beb

## II. Procedures

1. **S-E-A reviewed the following documents provided by HFW:**
   - Plaintiff's Original Complaint,
   - Affidavit of Manuel M. Maldonado, signed June 16, 2023,
   - Report by Ronald L. Signorino of Blueoceana Incorporated, dated January 5, 2024, with Mr. Signorino's CV,
   - American Arbitration Association Case # 01-21-0004-Award,
   - Video of incident in mkv-format video file "2_28_2023 3_49_59 PM (UTC-06_00).mkv",
   - USCG Certificate of Inspection for *Maersk Tennessee* (Bates Nos. MLL 000004-00005),
   - Deck grating photographs (Bates Nos. MLL 000010-000012),
   - Hatch gratings repair list, dated "2-22-2023" (Bates Nos. MLL 000013-000016),
   - Beşiktaş Shipyard Completion Report (Bates Nos. MLL 000017-000043),
   - Maersk Tennessee Drydocking Jobs on the Cross Decks Gratings Hatch Covers April to June 2022 (Bates No. MLL 000044),
   - Beşiktaş Shipyard Cargo Holds Tanktop, Cross deck Hatch Coaming Treatment (Bates No. MLL 000045),
   - ABS ISM Code Initial Audit Report (Bates Nos. MLL 000315-000318),
   - ABS ISM Code Interim Audit Report (Bates Nos. MLL 000319-000322), and
   - ABS ISM Audit Report (Bates Nos. MLL 000323-000326).
2. **S-E-A reviewed the following references:**
   - International Safety Management (ISM) Code, 2014 Edition,
   - USCG Port State Information Exchange (PSIX) data for *Maersk Tennessee* available online at https://cgmix.uscg.mil/psix/psixsearch.aspx,
   - Lloyds Register (LR) Ships in Class data for *Maersk Tennessee* available online at https://www.lr.org/en/lrofships/, and
   - Title 29, Code of Federal Regulations (CFR) Part 1918 - Safety and Health Regulations for Longshoring.

# III. Discussion

## Background

### Vessel Description

*Maersk Tennessee* (U.S. Official Number 1291852) is a 912.5-foot-long, 50,442 gross-ton (International Tonnage Convention) container ship constructed in 2007 by Hyundai Heavy Industries in Ulsan, South Korea. *Maersk Tennessee* is registered in the United States and classed by Lloyd's Register (LR). The ship is operated by Maersk Line Limited (Maersk). The ship was originally named *Safmarine Mafadi* and registered in Hong Kong. The ship was acquired by Maersk and renamed *Maersk Tennessee*. The ship completed a "reflag" to the U.S. registry with the issuance of a Certificate of Inspection (COI) from the U.S. Coast Guard (USCG) on April 4, 2019. **Figure 1** is an image of the *Maersk Tennessee* from www.vesselfinder.com.




**Figure 1: *Maersk Tennessee* (image from www.vesselfinder.com).**

The International Convention for the Safety of Life at Sea (SOLAS) and the International Load Line Convention (ICLL) contain the mandatory international construction and safety standards for *Maersk Tennessee*. According to USCG PSIX and LR records, the ship had a current SOLAS Ship Safety Construction Certificate issued by LR and a current ISM Code Safety Management Certificate issued by ABS on behalf of the USCG at the time of Mr. McCray's incident. LR completes annual surveys and compliance examinations to ensure compliance with international regulations and classification society rules. ABS completes annual compliance examinations for the ISM Code. The ship also had a current Certificate of Inspection (COI) issued by the USCG. The USCG also completes annual inspections to ensure compliance with international regulations and applicable U.S. domestic regulations.

## Incident Description

On February 28, 2023, Mr. Kevin McCray was employed by Houston Terminal, LLC, as a stevedore at the Barbours Cut Terminal in La Porte, Texas. The *Maersk Tennessee* was moored at the Barbours Cut Terminal to conduct cargo container transfer operations. Mr. McCray was standing on an elevated grated walking surface when it gave way, causing him to fall through the elevated grating to the deck surface below.

**Figure 2** is a pair of views of the grating where Mr. McCray fell (cropped from Bates No. MLL 000011). **Figure 3** is an example of the fasteners used to secure the grates to the support structure (cropped from Bates No. MLL 000010).

**Figure 4** is a still image of the incident video at run time 2:49. Mr. McCray's fall was recorded at run time 2:50. **Figure 5** is the same image, zoomed-in to identify Mr. McCray.

DocuSign Envelope ID: 23256B90-87C8-4ACC-AB68-096B7480C755




**Figure 2: Grating surface where Mr. McCray fell (Bates No. MLL 000011).**




**Figure 3: Close-up of grating fasteners (Bates No. MLL 000010).**

DocuSign Envelope ID: 23256B90-87C8-4ACC-AB68-096B7480C755




Figure 4: Still image of incident video at run time 2:49.




Figure 5: Cropped, still image of incident video at run time 2:49.

## Analysis

The documentation produced by Maersk indicated that the grating walking surfaces between the cargo bays were addressed during the ship's drydock at Beşiktaş Shipyard in Turkey. The Shipyard Completion Report Item No. 200.8 "Cross deck Gratings (revised)" indicated fabrication and renewal of the crossdeck gratings (Bates No. MLL 000034). The "revised" parenthetical indicated that extra attention was given to this work item. Based on this author's experience with regulatory oversight of shipyard repair work on USCG inspected vessels, the initial scope of work was "revised" to correct additional problems identified by the shipyard during their initial scope of work. The grating fabrication and replacement was completed during the shipyard period from April 12, 2022, to June 3, 2022. The initial scope of work presented to the shipyard was based on internal inspection/condition reports produced by the ship's crew.

Approximately 8 to 10 months later, and six days before Mr. McCray's incident, the ship's Deck Department completed an inspection of the crossdeck gratings. The inspection report dated February 22, 2023, (Bates No. MLL 000014) showed the crossdeck gratings for Bay 30 were in "Good" condition. "Good" is the highest condition on a scale of "Bad, Poor, Fair," and "Good" and is defined as "no maintenance required." It is important to note that overall, some maintenance items were identified, mostly bent railings and missing chain hooks; the crew members who completed the inspection were attentive and did not pencil whip the inspection report. Maersk's safety management system identified crossdeck gratings as a potential source of hazardous conditions. **Maersk's safety management system had procedural mechanisms in place to identify and correct potential hazards associated with the crossdeck grating. Maersk properly followed its procedures and properly inspected the area in question shortly before the incident.**

In the minutes leading up to Mr. McCray's incident, he was standing on and moving about the area with the grating. It did not collapse or give way with his first step onto the grating. As of the writing of this report, there is insufficient evidence or testimony to identify the precise failure/condition that allowed the crossdeck grating to give way while Mr. McCray was standing on it. **Regardless, the hazardous condition was latent, not readily identifiable by *Maersk Tennessee's* crew.**

Even though the ship's crew is generally in the best position to identify potential safety hazards on board their ship, Mr. McCray himself did not observe or identify any hazards associated with the crossdeck grating. As an experienced stevedore, he presumably would have avoided and/or reported any hazards he observed. This is not a criticism of Mr. McCray; he was an additional pair of experienced eyes that did not observe a latent hazard. Likewise, Mr. McCray's coworker, Mr. Manuel Maldonado, stated in his affidavit that he did not observe any wrong with the grating.

## Review of Report by Mr. Ronald L. Signorino

S-E-A reviewed the report of Mr. Ronald L. Signorino of Blueoceana Incorporated, dated January 5, 2024. S-E-A does not dispute that Mr. McCray fell through the grating walking surface. Statements to that effect aside, S-E-A will address the following opinions from Mr. Signorino's report:

> "Based upon the record provided to him, the expanded metal walking and working surface presented adjacent to Bay 30 aboard C/V MAERSK TENNESSEE was faulty and at a minimum not effectively secured;"
>
> "While arguments advanced by Defendant allege that refurbishment/renewal of C/V MAERSK TENNESSEE's athwartships expanded metal walking and working surfaces was affected while at Beşiktaş Shipyard some months before the date of the accident at issue is of little consequence, inasmuch as the actual completion of such refurbishment/renewal has been characterized by Defendant in an equivocal manner;"
>
> "Moreover, in the intervening space of time between drydocking and the accident at issue, a host of possibilities exist wherein the section of expanded metal walking and working surface which gave way under Plaintiff McCray would have become faulty;"
>
> "A pattern of less than forthright and unlawful treatment of a protected class of workers related to the general subject of occupational safety and health can be inferred to Defendant, given the record produced in relation to the Seaman's Protection Act complaint and award discussed above." (Signorino report pp. 5-6).

### Rebuttal

Again, S-E-A does not dispute that Mr. McCray fell through the grating walking surface. However, Mr. Signorino did not identify the failure mechanism nor explain the sequence of events leading to Mr. McCray's fall. The installation and condition of the grating fasteners were unknown at the time of Mr. McCray's incident. As such, **it was inappropriate for Mr. Signorino**

**to suggest that Maersk or the crew of the** *Maersk Tennessee* **could otherwise detect any potential hazards associated with the grating walking surface prior to Mr. McCray's incident.** In fact, Mr. Signorino stated, "in the intervening space of time between drydocking and the accident at issue, a host of possibilities exist wherein the section of expanded metal walking and working surface which gave way under Plaintiff McCray would have become faulty" (Signorino report p. 5).

Additionally, **Mr. Signorino did not address the February 22, 2023, inspection report produced by Maersk.** Other areas of concern were identified, but the grating where Mr. McCray was inspected and recorded as "good" (Bates No. MLL 000014).

Based on this author's USCG Marine Inspector and Marine Investigator experience, a responsible professional credentialed mariner follows the ship operator's (Maersk's) safety management system to report potential safety incidents. Although the USCG will follow-up on credible reports of safety incidents, regardless of their source, this does not relieve individual mariners of their obligation to implement and follow the directives of the ship operator's safety management system.

DocuSign Envelope ID: 23256B90-87C8-4ACC-AB68-096B7480C755

# Appendices

## Investigator Credentials

1. Investigator CV
2. Investigator Testimony Log
3. Investigator Billable Rate Disclosure