**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KEVIN MCCRAY** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| **v.** | § | |
| | § | **C.A. NO. 4:23-cv-00995** |
| **MAERSK LINE LIMITED AND** | § | |
| **MAERSK LINE-LTD, USA** | § | |
| | § | |
| ***Defendants.*** | § | |

**DEFENDANT'S SUMMARY JUDGMENT REPLY**
**AND DAUBERT MOTION TO EXCLUDE**

Defendant Maersk Line, Limited ("Maersk" and "Defendant") files this Reply to Plaintiff's Response to Defendant's Motion for Final Summary Judgment.

## SUMMARY

Maersk objects to the evidence and opinions in Plaintiff's Reply for the following reasons:

- Mr. Depaolo was not properly timely disclosed.
- Plaintiff did not properly designate Mr. Depaolo until three weeks after Plaintiff took the *ex parte* statement of Mr. Depaolo.
- Mr. Depaolo's statement was taken *ex parte* after the discovery deadline had run, and Plaintiff did not give Maersk notice of his intent to take the statement, or an opportunity to participate in the taking of the statement.
- Mr. Depaolo's statement should not be considered by the Court because it was neither timely taken nor timely produced.
- Mr Signorino's Supplemental Expert Report was produced after the report deadline.
- Plaintiff did not move for leave to produce a supplemental report after the scheduling order deadline.
- Mr. Signorino's expert opinion should not be considered by the Court because Mr. Signorino is not qualified to offer expert engineering opinions.
- Mr. Signorino's supplemental expert opinions are neither reliable nor relevant, in part because his opinions are impermissibly extrapolated based on *ex parte* conclusory statements regarding facts which existed after the grate fell six feet, and not on facts that existed at the time the turnover duty attached.

## MAERSK DID NOT RETAIN ACTIVE CONTROL

Maersk had turned over Plaintiff's work area to Plaintiff and his co-worker long before the

accident occurred. Maersk will not rehash the facts on this issue, but will briefly address several cases cited by Plaintiff in an attempt to show that Maersk had not turned over the area to Plaintiff.

Plaintiff wrote, Maersk "fails to consider the second prong of a vessel's active control duty owed to longshoremen working on board the Vessel – failing to remedy hazards to longshoremen may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." Plaintiff contends that because the walkway on which Plaintiff was working is at other times used by people other than longshoremen, Maersk retained active control of the walkway. Plaintiff cites to *Landry v. G.C. Constructors*, 514 F. App'x 432, 435 (5th Cir. 2013) in support of the proposition that a vessel "may be liable if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, *under the active control of the vessel* during the stevedoring operation." *Id.* (emphasis in original, but not in Plaintiff's brief.) While this is generally a correct statement of the law, Plaintiff failed to cite the relevant portion of *Landry, i.e.:*

> …a vessel owner does not violate the Active–Control Duty simply because a hazard develops during stevedoring operations or **because that hazard must be remedied in areas of the ship that might at other times be under the vessel owner's control**.[1]

*Id.* at 439-440. *Landry* is clear that merely because other people use the walkway at other times, this is not evidence that Maersk maintained active control at the time of the accident.

Plaintiff also cited to *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir. 1986) for the proposition that a "vessel owner was negligent where the longshoreman slipped and fell in an area under the control of the vessel owner and the vessel owner retained the obligation to clean the deck."[2] However, this annotation is misleading. The

[1] Plaintiff's Reply, Dkt. No. 24, at p.10.
[2] *Id.*

*Theriot* court found the vessel owner liable for two reasons. First, the court found the hazardous condition ***existed before*** Plaintiff began work: "The court below found that [Defendant] was at fault for failing to clean the deck prior to [plaintiff beginning work.] *Id.* at 535. The second reason was because the court "specifically found that [Defendant] continued to control the work area, retaining the obligation to clean the keyway deck." *Theriot* is inapplicable to the case before this court because there is no evidence the hazard existed before Plaintiff began work, and because there is no evidence Maersk retained active control of Plaintiff's work area.

Finally, Plaintiff cites to *Kiwia v. M/V Oslo Bulk 9*, 541 F. Supp. 3d 696, 709 (E.D. La. 2021) for the proposition Maersk did not need to "have control over the 'actual methods' of the stevedore's work" in order to have retained active control. However, the *Kiwia* court found the vessel liable because the vessel had sole control over the hatch cover which injured Plaintiff.[3] That is not the situation currently before this court.

Maersk did not retain active control over the walkway and grate in question. That area of the ship had been turned over to Plaintiff long before the accident.

**MAERSK DID NOT FAIL TO WARN OF HAZARD IT KNEW OF, OR WHICH IT SHOULD HAVE KNOWN**

Plaintiff is incorrect when he writes that "whether Defendant breached its turnover duty has previously been decided by this Court. Response at p. 10, Dkt. No. 19. *citing Grimble v. Maersk Line Ltd.,* 2020 U.S. Dist. LEXIS 264284 (S.D. Tex. July 27, 2020)(J. Werlein). The *Grimble* case involved a different ship, different liability facts, different questions of law and,

[3] *Kiwia* at 700-701. (Plaintiff was a longshoreman discharging cargo from a ship onto a barge which was moored to the outboard side of the ship. Plaintiff was working on the barge. He was injured when he climbed from the barge onto the ship and put his hand on the track for the hatch cover. The hatch cover closed, cutting off several of Plaintiff's fingers.)

therefore, is applicable to this case. In *Grimble,* Defendant argued it had no duty to warn Plaintiff of the two allegedly hazardous conditions, i.e., inadequate lighting and a supposedly unsecured grate, because Plaintiff had actual knowledge of both of these conditions.[4] None of these facts or issues are present in this case. Also, the issue of when the hazardous condition arose was not addressed in the Grimble matter.

**MOTION TO STRIKE SIGNORINO'S SUPPLEMENTAL OPINIONS**

A court can make a pretrial evaluation of whether an expert's opinion is inadmissible under Rule 702 of the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 592–93 (1993); see FRE 104(a). For an expert's opinion to be admissible, the expert must first be qualified. See FRE 702; Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir.2000).

If an expert is qualified, the court must determine whether the expert's opinion is (1) reliable (i.e., whether the expert's opinion has a reliable basis in knowledge of and experience in the particular field) and (2) relevant (i.e., whether the expert's opinion has a valid connection to the specific inquiry and is helpful to the jury). See FRE 702; *Daubert*, 509 U.S. at 590–91.

Here, Mr. Signorino is not qualified to offer a structural engineering opinion regarding the weight-bearing capacity of the grating. Additionally, Mr. Signorino's opinions are neither reliable nor relevant. Therefore, Maersk moves the Court to strike Mr. Signorino's supplemental opinions.

**A. Mr. Signorino is not Qualified to Proffer Expert Engineering Opinions.**

"Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.' " *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009), *citing* FRE 702. A

[4] The *Grimble* case involved the MV Maersk Wisconsin in which Defendant argued "that Plaintiff's accident resulted from inadequate lighting, an open and obvious condition of which Plaintiff was aware." *See* Case 4:19-cv-0012, Dkt. No. 42, Order at p.5.

district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Id.*

Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). In other cases, the relevant reliability concerns may focus upon personal knowledge or experience. *Id.*

The crux of Mr. Signorino's supplement opinion is a structural engineering opinion:

> At least one of that section's fastening clips, according to Mr. Depaola, was *" 'bent', 'loose'* and *'…would move around and swivel.'* In their combination, those attributes formed to present the hazardous circumstances which caused the accident." [5]
>
> **The weight of the Plaintiff while using the grating in its intended manner would not have caused the clamps to bend or loosen… The weight of the Plaintiff while using the grating in its intended manner would not have caused the clamps to bend or loosen**.[6]

With all due respect to Mr. Signorino, who has impressive experience and knowledge in other fields, Mr. Signorino is wholly unqualified to express a structural engineering opinion. Mr. Signorino does not have the knowledge, skill, experience, training, or education to offer structural engineering opinions. Mr. Signorino does not have an engineering degree, has never trained as structural engineer, has never worked as a structural engineer, is not a licensed engineer of any sort, is not a professional engineer, etc.[7] Furthermore, Plaintiff has offered no evidence that Mr. Signorino is qualified to opine of the proper maintenance of ship's gratings.

Defendant respectfully moves the Court to strike Mr. Signorino's supplemental opinions because Mr. Signorino is not qualified to proffer these supplemental opinions.

[5] *See* Exhibit E to Plaintiff's Response to Defendant's Motion for Summary Judgment, Conclusion at p.3.
[6] *Id.* (emphasis added).
[7] *See* Exhibit 1, Mr. Signorino's CV.

**B. <u>Mr. Depaolo's *Ex Parte* Statement and Mr. Signorino's Supplemental Report were not Timely Produced and should be Disregarded.</u>**

Mr. Signorino's supplemental opinions are based on an *ex parte* statement of a witness, Mr. Depaolo, who was not timely properly identified as a person with knowledge of relevant facts. Furthermore, the *ex parte* witness statement was not timely produced, and Mr. Signorino's supplemental opinions were also not timely produced.

Plaintiff identified Mr. Depaola as a person with knowledge of relevant facts on September 25, 2023 in his First Supplemental Rule 26 Disclosures. However, Plaintiff did not properly designate Mr. Depaola because Plaintiff did not provide a phone number, address, or any other identifying information at that time.[8] On June 10, 2024, Plaintiff took the *ex parte* statement of Mr. Depaola. Plaintiff did not advise defense counsel of his intent to take this statement, or provide defense counsel an opportunity to participate in the taking of the statement.[9] It was not until July 3, 2024, when Plaintiff served his Fourth Supplemental Rule 26 Disclosures, that Plaintiff provided a phone number for Mr. Depaolo and simultaneously produced Mr. Depaolo's *ex parte* statement.[10]

Pursuant to the Court's Order of November 2, 2023 (Dkt. No. 15), Plaintiff's deadline for expert reports was January 5, 2024. Plaintiff complied with the deadline and produced Mr. Signorino's report on January 5, 2024. Mr. Signorino was deposed in May 2024, before Plaintiff took Mr. Depaolo's statement. Plaintiff did not seek leave of this Court to conduct discovery after the discovery deadline, or leave to supplement his expert reports after the expert report deadline.

Defendant has been prejudiced by Plaintiff's failure to timely and properly identify Mr. Depaolo, by Plaintiff's failure to advise of his intent to take the statement of Mr. Depaolo, and by Mr. Signorino's supplemental opinions which were produced two months after Mr. Signorino's

---

[8] *See* Exhibit 2, Plaintiff's First Supplemental Rule 26 Disclosures.
[9] *See* Exhibit 3, Declaration of Thomas N. Lightsey.
[10] *See* Exhibit 4, Plaintiff's Fourth Supplemental Rule 26 Disclosures.

deposition. Defendant has not had an opportunity to depose Mr. Depaola, nor re-depose Mr. Signorino. Therefore, Defendant moves the Court to not consider Mr. Depaolo's *ex parte* statement and to strike Mr. Signorino's supplemental report and supplemental opinions.

**C. Mr. Signorino's Supplemental Opinions are neither Reliable nor Relevant**

A court must determine whether an expert's opinions are reliable and relevant. *Braggs v. BP Expl. & Prod., Inc.*, No. 23-30297, 2024 WL 863356, at *2 (5th Cir. Feb. 29, 2024). **The party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence**. *Id.* (emphasis added). Courts must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 593 (1993). The purpose of this requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Ku*mho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Here, Plaintiff has offered no evidence of the methodology of Mr. Signorino's opinion regarding what would, or would not, cause the clamps to bend or loosen. Rather, he merely offered a conclusory opinion that the "weight of Plaintiff while using the grating in its intended manner would not have caused the clamps to bend or loosen."

In this instance, Mr. Signorino testified he had never been on the ship, had never physically seen the grate, never conducted any testing, taken any measurements, or otherwise conducted any study or analysis of the grate in question:

> Q. Okay. So just so I'm clear, **have you ever been aboard this ship the Maersk TENNESSEE?**
> **A. No. No, I have not**.
> Q. **Did you have an opportunity to inspect the grate in question?**

**A. Not -- not the grates onboard the TENNESSEE, no**. I was never aboard the TENNESSEE.
Q. And so, then **you didn't have a chance to either inspect the grates, nor did you have a chance to inspecting the framing of the grates correct?**
**A. That's correct.**
**Q. And that also means you didn't get a chance to inspect the clamps that were holding the grating in place, correct?**
**A. Correct.** Yeah, I've only seen photographs of -- of that equipment.
Q. Yes, sir. And have you ever been on this ship at any other time?
A. Not to my recollection, I don't think so. Even before she was renamed, I -- **I don't think I was ever aboard this particular ship**.[11]

Q. All right.· So **you've done no physical testing on the grate in question, right?**
**A. I have not.** I wish I had.
Q. Right. **No measurements?**
**A. No. No**. Apart from what I can see in photographs, no measurements.
Q. **So you haven't had an opportunity to conduct any studies or analysis** other than the photographs to come to your conclusions?
A. **That's correct**.[12]

"[N]nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *Id.* Therefore, Defendant moves the Court to strike Mr. Signorino's supplemental opinions as not reliable.

Defendant also objects to Mr. Signorino's supplemental opinion because the facts on which these opinions are based are not relevant. As this Court knows, the turnover duty "relates to the condition of the ship **upon the commencement of stevedoring operations**." *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994) (emphasis added). Mr. Depaola went to the accident site an unknown period of time ***after*** the accident.[13] Mr. Depaolo's statement and opinions all relate to the condition of the grate after the grate fell. And, it is noteworthy that the grate fell six feet.[14]

[11] Exhibit 5, Mr. Signorino's deposition at pg. 54:22 – 55:19 (emphasis added).
[12] Exhibit 5, Mr. Signorino's deposition at pg.105:25 – 106:11 (emphasis added).
[13] *See* Exhibit B to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dkt. No.24, at p.9:2 -9.
[14] *See* Exhibit F to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dkt. No. 24, at ¶ 3.

Mr. Signorino does not account for what may have happened to this metal grate when it fell six feet into a metal hole, or what may have happened to the grate before Mr. Depaolo arrived on the scene.

The best, and only evidence, of the condition of the grate before the accident is the testimony of Plaintiff and his co-worker that they both inspected the grate before the accident and found it to be safe and in good condition.[15] Additionally, Plaintiff had walked on the grate in question several times before the accident, and the grate did not fall.[16] This fact and the testimony of Plaintiff and Mr. Maldonado are the only evidence of the condition of the grate before Plaintiff's accident. Mr. Depaolo's post-accident comments on the condition of the grate an unspecified time after the accident are not relevant and should not be considered by the Court.

***RES ISPA LOQUITUR***

As Plaintiff notes, Plaintiff must satisfy, by a preponderance of the evidence, the following three elements to be entitled to the inference of negligence pursuant to *res ipsa loquitur*:

1) the injured party was without fault;
2) the instrumentality causing the injury was under the exclusive control of the defendant; **and**
3) the mishap is of a type that ordinarily does not occur in the absence of negligence.[17]

*Sutton v. Royal Caribbean Cruises Ltd.*, 774 Fed. Appx. 508, 513 (11th Cir. 2019) (emphasis added).

Here, the only evidence is that the "instrumentality causing the injury" was *not* under Defendant's exclusive control, but rather had been turned over to the stevedore and longshoremen.

[15] See Exhibit 1 of Defendant's Motion for Summary Judgment, Dkt. No. 23, Plaintiff's deposition, at pg.40:24 – 41:10; *see also* Exhibit 2 of Defendant's Motion for Summary Judgment, Dkt. No. 23, affidavit of Mr. Maldonado at ¶ 3.
[16] Exhibit 1at p.54:1-18 and Exhibit 3 at p.81:1-8, of Defendant's Motion for Summary Judgment, Dkt. No. 23.
[17] Plaintiff's Response contained a typographical error and erroneously cited the second prong of the *res ipsa loquitur* test as "the defendant is under the exclusive control of what caused the injury."

(Plaintiff does not even argue it was under Maersk's exclusive control.) Therefore, Plaintiff cannot establish the second prong required for the use of the *res ipsa loquitur* inference.

**PRAYER**

Based on the foregoing, Maersk respectfully prays its summary judgment be granted, Mr. Signorino's supplemental opinions be struck, Mr. Depaolo's statement be disregarded, and for all other just and equitable relief to which it may be entitled.

Respectfully submitted,

**HOLMAN FENWICK WILLAN USA LLP**

By: */s/ Thomas N. Lightsey III*
Thomas N. Lightsey III
Texas Bar No. 12344010
Federal ID No. 84829
tom.lightsey@hfw.com
James T. Brown
Texas Bar No. 03138150
Federal ID No. 11656
jim.brown@hfw.com
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470

**ATTORNEYS FOR DEFENDANT MAERSK LINE, LIMITED**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served pursuant to the Federal Rule of Civil Procedure on all counsel of record on this 25th day of July 2024.

*/s/Thomas N. Lightsey III*
Thomas N. Lightsey III