United States District Court
Southern District of Texas
**ENTERED**
August 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KEVIN MCCRAY, § § *Plaintiff*, § § VS. § § MAERSK LINE LIMITED, § § *Defendant*. § § § | CIVIL ACTION NO. 4:23-CV-00995 |

### MEMORANDUM & ORDER

This is a negligence case resulting from Plaintiff Kevin McCray's injury in a container ship owned and operated by Defendant Maersk Line, Limited. Before the Court is Defendant's *Daubert* Motion to Exclude, ECF No. 25, and Defendant's Motion for Summary Judgment, ECF No. 23. For the reasons that follow, the Court finds that the Motion to Exclude should be **DENIED** and the Motion for Summary Judgment should be **GRANTED IN PART** and **DENIED in PART**.

I.   BACKGROUND

On February 28, 2023, Plaintiff Kevin McCray was working as a longshoreman by and under the direction of his stevedore employer, Houston Terminal LLC, on the MV *Maersk Tennessee*. Plaintiff was injured while performing his work lashing containers as they were loaded onto the M/V *Maersk Tennessee*. The M/V *Maersk Tennessee* is a container ship which is owned and operated by Defendant Maersk Line, Limited.

To perform his duties, Plaintiff utilized the vessel's common area walkways which were fitted with metal gratings to allow the vessel's crew to access the void space below. At the time of

1

the accident, Plaintiff was working in Bay 30 and had been working there, alongside his co-worker Manuel Maldonado, for at least 1½ to 2 hours. Around 4:00 PM, Plaintiff was standing on the metal grating on the walkway when it suddenly gave way underneath him causing him to fall into the void space below and sustain injuries.

On March 20, 2023, Plaintiff filed the present lawsuit against Maersk Line Limited and Maersk, Line-Ltd., USA. ECF No. 1. Plaintiff subsequently dismissed the claims against Maersk Line-Ltd., USA. ECF No. 5. Plaintiff's claims against Defendant Maersk Line Limited arise under section 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §905(b), which provides a negligence-based cause of action to a longshoreman who is injured while working aboard a vessel.

Maersk Line Limited, the only remaining defendant, moved for summary judgment on June 27, 2024. ECF No. 23. Plaintiff responded to the pending motion, ECF No. 24, and Defendant replied, ECF No. 25. Defendant's reply included a *Daubert* Motion to Exclude the sworn statement of John Depaolo and supplemental expert report of Ronald Signorino. The Court ordered expedited briefing on the Motion to Exclude, ECF No. 26.

Now before the Court are Defendant's Motion to Exclude, ECF No. 25, and Defendant's Motion for Summary Judgment, ECF No. 23.

## II. ANALYSIS

### a. Motion to Exclude

In his response to Defendant's Motion for Summary Judgment, Plaintiff included (i) a sworn statement from John Depaolo, his gang foreman on the day of the accident and (ii) a supplemental expert report from Ronald Signorino based on Depaolo's sworn statement. ECF No. 24-2; ECF No. 24-5. Defendant moves to exclude both of these pieces of evidence.

### i. Depaolo's Sworn Statement

Defendant moves to exclude Depaolo's sworn statement on the grounds that (1) it is an *ex parte* statement, (2) Depaolo was not properly designated in Plaintiff's Rule 26 disclosures, and (3) Depaolo's statement was taken after the discovery deadline. ECF No. 25 at 6-7.

Defendant argues that Depaolo's statement should be struck because the declaration was *ex parte*, and Defendant was not given an opportunity to participate in its taking. However, the *ex parte* nature of the statement is not a valid reason for its exclusion. "[S]worn statements are competent summary judgment evidence." *McBride v. City of New Braunfels*, 37 F.3d 633 (5th Cir. 1994). Although Defendant makes much of the fact that this statement was *ex parte* (as opposed to, for example, a deposition), Defendant has not presented any rule or precedent that requires Plaintiff to notify Defendant before taking a witness's statement. In addition, *ex parte* statements are not categorically disallowed as summary judgment evidence since most sworn statements are *ex parte*. Further, had Defendant wanted to depose Depaolo, it was free to do so. Defendant chose not to.

Next, Defendant argues that Depaolo was not properly designated in Plaintiff's Initial Rule 26 disclosures. On September 25, 2023, Plaintiff listed Depaolo as a person with knowledge of relevant facts in his First Supplemental Rule 26 Disclosures. ECF No. 25-2 at 4. However, Plaintiff did not include a telephone number or address for Depaolo and only said "J.C. Depaolo was Plaintiff's Foreman on the day of the incident made the basis of this lawsuit. Mr. Depaolo may have information and/or knowledge concerning the incident and Plaintiff's injuries." *Id.* On June 10, 2024, Plaintiff took the *ex parte* sworn statement of Depaolo. On July 3, 2024, Plaintiff served his Fourth Supplemental Rule 26 Disclosures which included Depaolo's phone number, ECF No. 25-4 at 5, and simultaneously served Depaolo's sworn statement.

Plaintiff's omission of Depaolo's address or telephone number from the First Supplemental Rule 26 disclosures may be a violation of Rule 26, which requires initial disclosures to include "the name and, if known, the address and telephone number of each individual likely to have discoverable information–along with the subjects of that information–that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). Plaintiff's defense is that he did not have Depaolo's contact information when he made earlier Rule 26 disclosures and that he amended his Rule 26 disclosure to include Depaolo's phone number soon after he obtained it. ECF No. 27 at 3-4.

Even if Plaintiff did violate Rule 26 and fail to properly designate Depaolo, the violation does not merit exclusion of Depaolo's sworn statement. Rule 37(c)(1) provides for the exclusion of evidence that wasn't disclosed in accordance with Rule 26 "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The relevant factors for this inquiry are "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). First, Depaolo's sworn statement is very important to Plaintiff's case because he directly observed the subject metal grating after the accident and saw that the securing clip was "bent" and "loose." ECF No. 24-2 at 10:21-11:13. Second, Defendant is not prejudiced by the inclusion of the evidence because Defendant itself possessed and disclosed in discovery a written statement from Depaolo which included his phone number and his statement that the clip was "not secure." ECF No. 27-3. Defendant clearly had notice of Depaolo's phone number and the relevant contents of his sworn statement before the statement was taken and before Plaintiff amended his Rule 26 disclosures. Third, any prejudice from the inclusion of the sworn statement could be cured

by granting a continuance. Finally, if Plaintiff's explanation for the failure to disclose, that he did not have Depaolo's contact information, is accepted, there would be no Rule 26 violation in the first place. Therefore, all the factors weigh in favor of Plaintiff and against excluding Depaolo's sworn statement.

Finally, Defendant argues that Depaolo's sworn statement should be excluded because it was taken after the discovery deadline and thus wasn't timely taken or produced to Defendant. Depaolo's sworn statement was taken on June 10, 2024, after the extended discovery deadline of April 15, 2024, and it was produced to Defendant on July 3, 2024. Although the sworn statement was not disclosed before the discovery deadline, the untimely disclosure was harmless under the Rule 37(c) standard analyzed above. For the same reason that the failure to disclose Depaolo's phone number is harmless, the failure to disclose his sworn statement is harmless – i.e., Defendant was already aware of the relevant content of the statement and had in fact informed Plaintiff of it through its discovery disclosures. Therefore, the Court finds that Defendant's Motion to Exclude Depaolo's sworn statement should be denied.

### ii. Signorino's Supplemental Report

Defendant also moves to exclude the supplemental report from Ronald Signorino, Plaintiff's expert witness, which was based on Depaolo's sworn statement. Defendant moves to exclude the supplemental expert report on the grounds that (1) the report is untimely since it was produced after the expert report deadline in the scheduling order, (2) Signorino was not qualified to offer opinions on engineering, and (3) the report is not "reliable or relevant" since it lacks evidence of Signorino's methodology.

First, Defendant argues that the supplemental report should be excluded because it was produced after the deadline in the scheduling order and Plaintiff did not move for leave to file the report. Plaintiff's deadline to designate expert witnesses and disclose expert reports was January

5

5, 2024, and Plaintiff complied with the deadline by designating Signorino and producing his report on January 5, 2024. ECF No. 15. Signorino was deposed on May 9, 2024. ECF No. 23-3. Then, Plaintiff produced Signorino's Supplemental Report, based on Depaolo's sworn statement, on July 3, 2024. ECF No. 27 at 7. Plaintiff did not seek leave of the Court to conduct additional discovery or supplement his expert report after the deadline.

To determine if the untimely disclosure of the supplemental report was substantially justified or harmless pursuant to Rule 37(c)(1), the Court must consider four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). First, Plaintiff explains that he could not timely submit the supplemental report because he did not receive Depaolo's written statement from Defendant until April 24, 2024, after the expert report deadline. Signorino therefore did not know about Depaolo's observation that the grating clip was not secure until after the expert report deadline had already passed. *See In re Compl. of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016) (finding that first factor weighed against exclusion where untimely expert report was based on information disclosed in discovery that was not available before expert report deadline). Further, Signorino's supplemental report is important to Plaintiff's case and response to Defendant's summary judgment motion because it is relevant to establishing causation. Defendant may suffer some prejudice from allowing Signorino's supplemental report and testimony on this issue, but Plaintiff has agreed to make Signorino available to be re-deposed on the contents of the supplemental report if Defendant wants. ECF No. 27 at 7. Plaintiff has also agreed to let Defendant designate a rebuttal witness if it wishes. *Id.* A continuance and opportunity to depose Signorino again and/or designate a rebuttal witness is sufficient to cure any prejudice to Defendant.

6

Therefore, the test weighs in favor of Plaintiff and against excluding Signorino's supplemental report.

Nest, Defendant argues that Signorino is not qualified to offer engineering opinions, as he is not an engineer. An expert must be minimally qualified by knowledge, skill, experience, training, or education to testify about their subject matter. FED. R. EVID. 702. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999). Defendant points out that Signorino does not have any training, education, or experience as a structural engineer. ECF No. 25 at 5. Defendant then argues that the "crux" of Signorino's supplemental report is a structural engineering opinion that he is not qualified to offer: "The weight of the Plaintiff while using the grating in its intended manner would not have caused the clamps to bend or loosen…." *Id.*

Although Signorino cannot be qualified as an expert in structural engineering, he does not need that qualification to opine on the whether the bent and loose grate clip caused Plaintiff to fall. It may be a close call, but Signorino's 60 years of experience in the maritime transport industry, which includes experience with longshoring operations and promulgating safety regulations for the maritime transportation industry, sufficiently qualifies him to opine on this issue. He is qualified to testify that "The weight of the Plaintiff while using the grating in its intended manner would not have caused the clamps to bend or loosen…" based on his extensive experience with similar vessels and grates. That experience enables him to opine on whether a grate would collapse from the weight of Plaintiff walking on it or whether a defect must have existed prior to Plaintiff's actions. Defendant argues that Signorino lacks the structural engineering expertise necessary to issue this opinion, but his lack of engineering experience should go to the weight of his opinion

rather than to its admissibility. Defendant remains free to challenge Signorino on his lack of engineering knowledge on cross examination.

Finally, Defendant argues that Signorino's supplemental report is not reliable or relevant. The party offering the expert must show that (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. The district court must make a "preliminary assessment of whether that reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology can be applied to the facts at issue." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding that courts must perform this gatekeeping function with respect to all expert testimony). The goal of this inquiry is to "ensure the expert uses reliable methods to reach his opinions." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). The party seeking to introduce the expert testimony has the burden to show the expert's opinions are reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Defendant argues that Plaintiff has not met the burden of establishing reliability or relevance. First, Defendant argues that Plaintiff has not established reliability because he has not provided evidence of Signorino's methodology in determining what would or would not cause the clamps to bend or loosen. Defendant characterizes Signorino's supplemental report as a "conclusory opinion" that was not based on Signorino's own observations, testing, measurements, or other analysis of the grate. ECF No. 25 at 7-8. Second, Defendant argues that Plaintiff has not established relevance because Depaolo's observations of the grate, which are the basis of Signorino's supplemental report, were made after the accident and after the grate fell several feet.

8

On reliability, experts are permitted to rely on witness statements in reaching their conclusions. *See Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 746 (5th Cir. 2017) ("But there is no requirement that an expert derive his opinion from 'firsthand knowledge or observation.'"). Signorino's initial report stated that the "metal working surface presented adjacent to Bay 30 aboard the [Vessel] was faulty and at a minimum not effectively secured," and that such "faulty condition of that walking and working surface was the proximate cause of Plaintiff McCray's fall through it." ECF No. 27-7. For his supplemental report, Signorino relied on Depaolo's sworn statement about the securing clip and opined that the securing clip was the "faulty condition" that caused Plaintiff's accident. Although Signorino did not examine the grate himself, he was permitted to rely on Depaolo's statements and photographs, as well as his own experience with similar grates, to reach his conclusions. *See Deshotel*, 850 F.3d at 746 ("The expert based his testimony purely on his industry experience and his review of a deposition, and we held that a jury could reasonably credit his testimony."). After all, the "the reliability inquiry is flexible, and the judge has discretion in determining which factors are most germane in light of the nature of the issue, the particular expertise, and the subject of the expert's testimony." *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). Here, Plaintiff has sufficiently established the reliability of Signorino's supplemental report.

On relevance, Signorino's supplemental report is obviously relevant to the issue of causation. Defendant can argue to the jury that Depaolo's observation of the grate and securing clip cannot establish causation because it was made after the accident, but Depaolo's observations and Signorino's opinions are certainly relevant to establishing the cause of Plaintiff's accident. Therefore, Signorino's supplemental report is both reliable and relevant under Federal Rule of Evidence 702.

In sum, the Court finds that there is no reason to exclude Depaolo's sworn statement. The Court also finds that Signorino is qualified to provide expert testimony on the metal grating and that his supplemental report is reliable and relevant under *Daubert*. Therefore, Defendant's *Daubert* Motion to Exclude should be denied.

### b. Motion for Summary Judgment

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

"[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718-19.

This case is brought under 33 U.S.C. § 905(b), which provides a negligence-based cause of action to longshoremen who are injured while working aboard a vessel. It is governed by *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156 (1981), in which the Supreme Court articulated the scope of a vessel owner's duties to longshoremen working aboard a vessel. "The basic principle which emerges from *Scindia* is that primary responsibility for the safety of the longshoremen rests upon the stevedore." *Randolf v. Laeisz*, 896 F.2d 964, 970 (5th Cir. 1990). However, vessels still owe three duties to longshoreman: "(1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene." *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391 (5th Cir. 2008). The first two duties – active control duty and turnover duty – are at issue here.

### i. Active Control Duty

Plaintiff brings a negligence claim in which he asserts that Defendant violated its duty to exercise reasonable care in the areas of the ship under the active control of the vessel, including the walkway. Defendant argues that the walkway was not under its active control at the time of Plaintiff's accident as it had turned over control to the stevedore. Therefore, Defendant argues that Plaintiff cannot establish a claim for violation of the active control duty.

The active control duty requires a vessel owner to "exercise due care to avoid exposing longshoremen to harm from hazards that they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Manson Gulf, L.L.C. v. Modern Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017). To determine whether a vessel owner retains active control over an area, the court "generally considers whether the area in question is within the contractor's work area, whether the work area has been turned over to the contractor, and whether the vessel owner controls the methods and operative details of the stevedore's work."

*Dow v. Oldendorff Carriers GMBH & Co.*, 387 F. App'x 504, 507 (5th Cir. 2010). The Fifth Circuit has described the requisite control under the active control duty "as being akin to 'operation control' at the time of the activities in question." *Baham v. Nabors Drilling USA*, LP, 721 F. Supp. 2d 499, 509 (W.D. La. 2010), *aff'd sub nom. Baham v. Nabors Offshore Corp.*, 449 F. App'x 334 (5th Cir. 2011). "If the vessel relinquishes control over an area or a piece of equipment to the stevedore, the active control duty is extinguished." *Id.*

Plaintiff has not established any genuine dispute of fact that precludes the Court from finding as a matter of law that the walkway had been turned over to the stevedore and was not under Defendant's active control. First, Plaintiff has not produced any evidence that any of the vessel's crew used the walkway, Plaintiff's work area, during the cargo loading operation. Instead, all the evidence in the record suggests that Defendant had turned over the cargo operations and related work areas, including the walkway, to the stevedore and longshoremen. Plaintiff testified that while he and his co-worker were working in Bay 30, they were the only two people in the area. ECF No. 23-1 at 36:2-13 (Plaintiff's deposition). Although "the mere presence of vessel employees is not necessarily indicative of active control," the Fifth Circuit has repeatedly held that the "complete *absence* of such personnel as evidence of the opposite—a lack of vessel control." *Manson Gulf*, 878 F.3d at 135; *Fontenot v. U.S.*, 89 F.3d 205, 208 (5th Cir. 1996); *Burchett v. Cargill, Inc.*, 48 F.3d 173, 179 (5th Cir. 1995). In his response, Plaintiff cites the sworn statement of Depaolo that the walkway was "utilized by the ship's crew, sometimes inspectors, whoever needs to move around on a vessel." ECF No. 24-2 at 9:18-24. However, Depaolo's general statement that the walkway was at other times used by vessel employees does not establish a dispute of material fact as to whether the walkway was under the active control of Defendant at the time of the cargo operation and accident.

Further, Plaintiff has not produced any evidence that Defendant retained "operation control" over the cargo operation or Plaintiff's work. Plaintiff testified that, on the day of the accident, his foreman was his direct supervisor and told him to work on loading operations in Bay 30. ECF No. 23-1 at 25:24–26:9 (Plaintiff's deposition). Plaintiff also admitted in a Request to Admission that "no crewmember of the MV Maersk Tennessee instructed [him] on how to perform [his] job on the day of the incident." ECF No. 23-5 at No. 62. During his deposition, Plaintiff confirmed that the details of his work were not supervised by the vessel's crew. ECF No. 23-1 at 32:7-10. The uncontroverted evidence is that Defendant did not retain operation control over the cargo loading operation but had rather turned over control to the stevedore.

Plaintiff argues that the active control duty applies "where an appurtenance and component part of the Vessel causes a longshoreman's injury," and that Defendant's crewmembers "remained fully responsible for maintaining, inspecting, and repairing such gratings, and ensuring those working aboard the vessel had safe access to perform their work." ECF No. 24 at 15, 9. However, Defendant's responsibility to maintain, inspect, and repair the vessel's gratings *in general* does not establish that Defendant had active control over the walkway *at the time of the accident*. The Fifth Circuit previously held that the active control duty was not violated when a vessel owner left a puddle of oil and grease on a crane landing that was turned over to the stevedore. *Pimental v. LTD Canadian P. Bul*, 965 F.2d 13 (5th Cir. 1992). The crane was attached to the vessel as a component part, and the vessel crewmembers had a general responsibility to inspect and maintain the crane. *Id.* Yet, the Fifth Circuit found that the "crane was only being operated by employees of the stevedore" and concluded "[c]learly, the crane and the crane housing were not under the active control of the vessel; the crane and the crane housing are areas that were turned over to the stevedore." *Id.* at 17. Therefore, it is not enough for Plaintiff to establish that a component part of

13

the vessel caused his injury and that Defendant's crewmembers were generally responsible for that component part. Plaintiff must go further to establish that Defendant had active control of the component part, the walkway, at the time of his accident, and he has not produced evidence to establish that.

The cases cited by Plaintiff do not support his version of the active control duty either. Plaintiff quotes *Landry v. G.C. Constructors*, 514 F. App'x 432, 435 (5th Cir. 2013) which says that a vessel "may be liable if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation," but the opinion continues "a vessel owner does not violate the Active–Control Duty simply because a hazard develops during stevedoring operations or because that hazard must be remedied in areas of the ship that might at other times be under the vessel owner's control." Therefore, *Landry* does not support turning the evidence that Defendant's employees exercise control of and responsibility over the walkway at other times into proof of Defendant's active control at the time of the accident. Plaintiff also cites to *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir. 1986) which he interprets as finding "that the vessel owner was negligent where the longshoreman slipped and fell in an area under the control of the vessel owner and the vessel owner retained the obligation to clean the deck." However, the district court there made a specific finding that the vessel owner "continued to control the work area, retaining the obligation to clean the keyway deck." *Id.* It is exactly the evidence of active control of the work area that is missing here. Finally, Plaintiff cites to *Kiwia v. M/V Oslo Bulk 9*, 541 F. Supp. 3d 696, 709 (E.D. La. 2021) for the proposition Maersk did not need to "have control over the 'actual methods' of the stevedore's work" in order to have retained active control." However, the Court there found that the vessel owner retained active control, even sole control, of the hatch cover

which injured Plaintiff. None of these cases support Plaintiff's argument that Defendant retained active control of the walkway in light of the lack of evidence of operation control.

Because there is no genuine dispute of fact that bears on the issue of whether Defendant retained active control of the walkway, the Court find that Defendants should be granted summary judgment on Plaintiff's active control claim.

### ii. Turnover Duty

Plaintiff further argues that, if the walkway was turned over to the stevedore, Defendant breached its turnover duty by failing to turn over the vessel in safe and proper working condition and failing to warn Plaintiff of the latent danger in the grating. Defendant moves for summary judgment on the turnover duty claim on the grounds that Plaintiff has insufficient evidence to prove such a violation.

The turnover duty encompasses two related obligations. "First, the [vessel] owner owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety." *Kirksey*, 535 F.3d at 392. "Second, the owner owes a duty to warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it." *Id.* The duty to warn of hidden dangers is "narrow" and excludes "dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering." *Id.*

Defendant first argues that Plaintiff has proffered no evidence on what caused the grate to fall and thus cannot show that there was any relevant dangerous condition on the vessel when it was turned over. Defendant points to testimony from Plaintiff that he did not know specifically why the grate fell. ECF No. 2-1 at 45:10-12, 68:5-16 (Plaintiff's deposition). Plaintiff's expert on

15

liability, Ronald Signorino, also testified that he couldn't identify a specific action of Defendant's that caused the grate to fail. ECF No. 23-3 at 109:2-19 (Signorino's deposition).

However, Plaintiff has provided evidence on causation. McCray's gang foreman, John Depaolo, inspected the part of the metal grate that gave way after the incident, and stated that the grate's securing clip, which is used to keep the grate in place, was "bent." ECF No. 24-2 at 10:11-20 (Depaolo's sworn statement). He also noticed that the securing clip was "loose" and explained that it would need to have been tighter in order to keep the grate in place. *Id.* at 10:21-11:13, 12:23-13:6. A reasonable jury could infer from this testimony that the grate gave way due to a faulty latching mechanism. In Texas, "non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007). Laypersons are equipped to understand the cause-and-effect relationship between a "bent" and "loose" securing clip and a falling grate. Plaintiff also presents expert testimony from his designated expert, Signorino. Signorino's first expert report did not identify the specific cause of the accident but stated that the walkway "offered by the Defendant to the Plaintiff was faulty and that its faulty condition was in every manner responsible for the injuries sustained." ECF No. 27-7 at 4. Signorino's supplemental expert report further opines that "the cause of this accident can be more precisely directed to the inability of that particular section of grating to uniformly support the weight of the Plaintiff due to the vessel's failure to properly inspect and maintain the grating." ECF No. 24-5 at 3. He goes on to say "[t]he weight of the Plaintiff while using the grating in its intended manner would not have caused the clamps to bend or loosen. The description from Mr. DePaolo indicates that the grating was not properly maintained

or not properly secured." *Id.* Thus, Plaintiff has presented sufficient evidence of a genuine dispute of fact as to the cause of the grate failure.[1]

Next, Defendant contends that Plaintiff cannot show that the grate presented a danger at the time of the turnover. The turnover duty applies only to dangers which exist "upon the commencement of stevedoring operations." *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994); *Moore v. M/V ANGELA*, 353 F.3d 376, 380 (5th Cir. 2003) (same). Thus, to prevail Plaintiff must show that the latch was defective at the time of the turnover.

A reasonable jury could infer from the evidence presented that the latch was defective at the time of turnover. The statement in Signorino's supplemental report that "[t]he weight of the Plaintiff while using the grating in its intended manner would not have caused the clamps to bend or loosen" supports this inference. ECF No. 24-5 at 3. Signorino's original report also concluded that the grate hadn't been effectively secured, causing Plaintiff to fall through. ECF No. 27-7 at 5. Although this conclusion is perhaps undermined by Signorino's statement during his deposition that he did not know the exact cause of the grate failure, it is up to the jury to decide how to weigh the potentially contradictory evidence. ECF No. 23-3 at 103:22-104-3. In addition to Signorino's reports and testimony, Plaintiff has offered Depaolo's sworn statement which explains that it is not common for grates on vessels to give way. ECF No. 24-2 at 15:14-16. Depaolo's statement suggests that Plaintiff's act of walking across the grate would not have caused it to give way in the absence of a defect and that the condition causing the injury (i.e., the defective latch) must have existed prior to the start of the operation.

---

[1] Plaintiff argues in the alternative that even if this does not constitute sufficient evidence of causation, the doctrine of *res ipsa loquitur* applies. That is, Plaintiff contends that the grate could not have fallen but for some negligence of Defendant's. The Court need not reach the issue of whether *res ipsa loquitur* applies to this case insofar as the testimony regarding the grate's loose clip is sufficient for Plaintiff to survive summary judgment on the issue of causation.

To be sure, there is also evidence in the record that could support the opposite inference that the latch was not defective at the time of turnover. The primary piece of evidence in support of that inference is the fact that Plaintiff and his co-worker had walked over the grate multiple times with no problem before Plaintiff eventually fell. The inference is also supported by the testimony of Plaintiff and his co-worker that they had inspected the walkway (including the grating) at the start of their shift and did not notice any issues. ECF No. 23-1 at 40:24-41:10; ECF No. 23-2 (Maldonado affidavit). But Plaintiff has put forth sufficient evidence to create a genuine dispute on the issue of whether the grate posed a danger at the time of turnover.

Finally, as to the turnover duty to warn, Defendant argues that a "reasonably competent stevedore should anticipate encountering" a falling grate such that the vessel owner cannot be held liable for a failure to warn of the danger. To support this argument, Defendant cites to Plaintiff's deposition where he stated that he had seen falling grates in safety training videos that discussed different types of accidents. ECF No. 23-1 at 40:2-16. Defendant also cites Signorino's deposition testimony that a grate falling is "known to have happened before." ECF No. 23-3 at 60:12-61:7. On the other hand, Depaolo stated that in his 47 years of experience with longshoring operations, it was not common for gratings to fall. ECF No. 24-2 at 15:14-16. The Fifth Circuit previously held that summary judgment was inappropriate in a similar circumstance where some witnesses testified that the hazard at issue was expected and a "common occurrence" while others testified that the hazard was "not common at all." *Manson Gulf*, 878 F.3d at 136. Here too, the contrasting accounts on whether a falling grate was a common danger that a reasonably competent stevedore would anticipate is a genuine dispute of material fact.

Because there are genuine disputes of fact on the issue of whether Defendant violated the two obligations that are part of the turnover duty, the Court finds that Defendants should be denied summary judgment on Plaintiff's turnover duty claim.

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude (ECF No. 25) is **DENIED**. Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED** on Plaintiff's active control claim and **DENIED** on Plaintiff's turnover duty claim.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 29th day of August, 2024.

_____
Keith P. Ellison
United States District Judge